STATE OF NEBRASKA, APPELLEE, V. LONNIE C. PATMAN, APPELLANT.

416 N.W.2d 582

Filed December 18, 1987.    No. 87-097.

Thomas M. Kenney, Douglas County Public Defender, and Cathy K. Bashner, for appellant.

Robert M. Spire, Attorney General, and Janie C. Castaneda, for appellee.

HASTINGS, C.J., WHITE, and GRANT, JJ., and BRODKEY, J., Retired, and CORRIGAN, D.J.

HASTINGS, C.J.

Following a bench trial, the defendant was convicted of first degree murder, second degree assault, and two counts of use of a firearm to commit a felony. He was sentenced to consecutive terms of life imprisonment, 20 months to 5 years, and two sentences of 2 to 4 years. He has appealed to this court, alleging, first, that the trial court erred in overruling his objection on the ground of insufficient foundation to the introduction into evidence of a certain written note and, secondly, that the trial court erred in overruling his motion for a directed verdict and motion to dismiss. We affirm.

In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact. The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987). The trial court is given broad discretion in the admission of evidence, and such rulings will not be overturned on appeal absent a showing of an abuse of discretion. In cases which are tried to the bench, there is a presumption that the judge considered only competent, relevant evidence. *State v. Parsons*, 226 Neb. 543, 412 N.W.2d 480 (1987).

There is little dispute concerning most of the evidence. On June 16, 1986, the defendant went over to a trailer house in which he and Juliana Moran (also known as Sam) had once lived. This was located in Omaha, Nebraska. Finding that his key no longer fit the lock, he broke a window and entered the trailer to await Moran's return. In the meantime, he retrieved his .25-caliber automatic weapon from a sewing basket where he had hidden it, and placed the gun in the spare bedroom. A short time later Moran and David Barrickman arrived at the trailer house.

According to Moran's testimony, Barrickman started down the hallway and saw the defendant. She immediately heard two "pops" like "fire crackers." According to the defendant, Barrickman had swung and hit the defendant in the head, then

threatened to kill the defendant, and "started going for his pocket." The defendant stated that he then reached for his gun and started shooting. Immediately thereafter, said the defendant, the victim Barrickman fell, and he, the defendant, started backing up, because he wanted to talk to "Sam." However, he claimed that she had a footstool with which she was going to hit him, so he shot her in the leg.

Defendant admitted that he went back "in there" to see how Barrickman was, and when defendant reached him, Barrickman was lying down but still threatening to kill him. Defendant then hit him on the head and arm with a double-barreled shotgun.

Moran testified that as Barrickman started down the hall, she did not hear him say anything; rather, she heard the two "pops," and the defendant then came back into the living room. She also denied that she had a footstool in her hand, but said that the defendant first pointed the gun at her head and then lowered it and shot her in the leg. She also said that when the defendant went back to where Barrickman was, she "heard like flesh-to-flesh beating, in the head beating, and then I heard David say, 'Quit, Lonnie, quit.' " She did not at any time hear Barrickman threaten the defendant, and she heard one more shot as she was going out the door for help.

The defendant left the premises and, after finding his brother, told him that defendant had done "something wrong," and then drove to Lincoln to catch a bus. On the way, he threw his gun out the window into the Platte River. The defendant further testified that he boarded a bus and was arrested in Grand Island early the next morning.

Dr. Jerry Wilson Jones, a pathologist, testified that the four gunshot wounds he found in the victim Barrickman would not necessarily have killed him; that he would have been alive and quite conscious, although unable to move from the waist down. He also described injuries to Barrickman's skull as

> very massive in that not only are the front part of both sides of the skull fractured, but there also are multiple and extensive fractures involving the entire right side of the skull and even extending into the back of the left side of the skull, and also in association with these there are

massive bruises of both sides of the brain, swelling of the brain, and even bleeding into the brain stem.

In addition, Barrickman had several "defensive injuries," which "would most likely be produced as a result of the person defending themselves from some blunt object." Barrickman eventually died of these injuries.

Upon his arrest, the defendant had in his possession a handwritten note which read, "Who ever find this note, I want every one to know that I love Sam so much, that if I can't have her, no one will. I've told your family that I love you very much, and I can't live without you. I'm taking mine & your life. Lonnie." The defendant identified it as "a note I wrote and stuck it in my wallet." The defendant claims that he wrote it in February 1986, and kept it with him at all times.

The note was offered into evidence at the trial and received over the defendant's objection. Defense counsel said, "I would have no objection as to foundation," but he did object as to relevance and prejudice. The objections were overruled, and the defendant eventually was found guilty of all counts. Even though counsel did not object on foundation, because this is a first degree murder case, we will discuss that assignment of error.

It is quite apparent that the note was relevant on the issue of premeditation. It certainly was prejudicial, but that is no basis, standing alone, to deny its admission. The foundation argument is entirely without substance. Defendant argues that the note was "assumed" to have been written by the defendant, yet "[t]he handwriting was never compared with an authenticated exemplar," nor was the note "viewed by anyone familiar with the Defendant's writing." Brief for Appellant at 8. Defense counsel seems to overlook the fact that the defendant admitted that he had written the note. It was admissible as an admission by a party. Also, Neb. Rev. Stat. § 27-901(2) (Reissue 1985) provides that an item of evidence may be authenticated or identified by "(a) Testimony that a matter is what it is claimed to be . . . ."

The defendant argues self-defense. He claims that he feared that Barrickman, having threatened to kill him, would harm him, so it was necessary to shoot him. However, the defendant

himself testified that Barrickman was backing up toward the bedroom when the defendant shot him, and, as a matter of fact, he admitted shooting him twice in the back.

Clearly, viewing the evidence in the light most favorable to the State, the defendant's self-defense theory is not only inapplicable to the shooting of Barrickman, but is inapplicable to the beating as well. The defendant purposely returned to where Barrickman lay and, although the defendant could not at that point have reasonably believed his life was in danger, proceeded to kill Barrickman by beating him on the head with a double-barreled shotgun.

Furthermore, the facts fully support a finding of first degree murder and second degree assault, as well as the two counts of committing a felony with a firearm. "In reviewing this matter we must bear in mind that the factual findings of a judge who serves as the trier of fact in a criminal case will not be disturbed on appeal unless clearly wrong." *State v. Moniz*, 224 Neb. 198, 202, 397 N.W.2d 37, 40 (1986).

Since the judge's findings in this instance, including the presence of malice, premeditation, and deliberation, were fully supported by the evidence and not clearly wrong, the convictions should not be overturned, and are affirmed.

AFFIRMED.