STATE OF NEBRASKA, APPELLEE, V. LEROY A. ANDERSEN,
APPELLANT.
468 N.W.2d 617

Filed May 3, 1991.   No. 90-346.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Robert M. Spire, Attorney General, and James H. Spears for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The defendant, LeRoy A. Andersen, was convicted by a jury of two counts of sexual assault of a child, in violation of Neb. Rev. Stat. § 28-320.01 (Reissue 1989). Following a presentence investigation and evaluations ordered by the court, Andersen was determined to be a mentally disordered sex offender whose disorder is nontreatable. He was sentenced to 20 months' to 5 years' imprisonment on each count, the sentences to run consecutively, with credit for 323 days. In his appeal, the defendant contends that the district court erred in (1) overruling his motions for dismissal, directed verdict, and new trial; (2) finding that his disorder is nontreatable; (3) imposing excessive sentences; and (4) imposing consecutive sentences.

In his first assignment of error, Andersen contends that his motions for dismissal, directed verdict, and new trial should have been sustained because the evidence was insufficient to support a finding of guilty on count II, sexual assault of T.H. The essence of Andersen's argument is that the evidence fails to provide any basis for finding that Andersen subjected T.H. to sexual contact.

> In a criminal case a court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged, or (2) evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained.

*State v. Clancy*, 224 Neb. 492, 501, 398 N.W.2d 710, 717 (1987).

In resolving a challenge to the sufficiency of the evidence to sustain a conviction in a criminal case, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. *State v. Patrick*, 227 Neb. 498, 418 N.W.2d 253 (1988); *State v. Richardson*, 227 Neb. 274, 417 N.W.2d 24 (1987). The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Patman*, 227 Neb. 206, 416 N.W.2d 582 (1987); *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987). A jury verdict of guilty will not be overturned on appeal unless it is based on evidence so lacking in probative force that it can be

said as a matter of law that the evidence is insufficient to support the verdict. *State v. Jahan-Shahi*, 237 Neb. 543, 466 N.W.2d 795 (1991); *State v. Willett*, 233 Neb. 243, 444 N.W.2d 672 (1989).

The evidence, viewed in the light most favorable to the State, shows that the incident in question occurred in the late afternoon on April 20, 1989, in Lincoln, Nebraska, in Peach Park. The victims, T.L. and T.H., were friends, both 7 years old, and the defendant was 56 years old. Heather Nelson, a witness to the incident, testified that at approximately 7 p.m. there were three young children, two girls and a boy, playing in the park. Nelson explained that while she was in the park, the children asked her to lift them on top of some culverts in the park. Nelson did so and then sat down on a picnic bench next to where the children were playing. While she was sitting on the bench, the defendant entered the park, approached Nelson, and began to talk with her. Shortly thereafter, the two little girls asked Nelson to help one of them climb back onto a culvert and to hand them pebbles. After helping the little girls, Nelson then went over to the little boy, who was on another culvert, and handed him pebbles.

When Nelson went to help the little boy, the defendant went over to the two little girls and started handing them pebbles. As the defendant handed the girls pebbles with his right hand, he placed his left hand on the leg of T.L. According to Nelson, the defendant first placed his hand below the knee of T.L., on the outside of her leg. He then moved his hand up the side of her skirt on the outside part of her leg. Nelson testified that she looked away for a moment and then turned around to see the defendant's hand going up the inside of T.L.'s skirt. Nelson then told the girls to sit down.

When the two girls sat down, Nelson brought them some more rocks. After picking up rocks, Nelson turned around and saw the defendant's hand going up the inside of T.L.'s skirt. According to Nelson, the defendant's hand was on the inside of T.L.'s leg and his hand was under her skirt. Disturbed by what she had seen, Nelson told her boyfriend, Tony Scattergod, who was playing basketball in the park, what the defendant was doing. When they looked over to where the defendant was

standing, however, the defendant had stopped. Nelson then returned to the picnic table and sat down. Moments later, she witnessed the defendant's hand rubbing the inside part of both girls' legs, underneath their skirts. Nelson again told Scattergod what the defendant was doing. This time, Scattergod yelled at the defendant, who then ran away.

Nelson told the girls to run home and tell their mothers what had happened. Later, when police officers came to the park, Nelson gave them a description of the defendant. Two days later, Nelson identified the defendant from a photographic array.

One of the victims, T.L., testified that she and her friend, T.H., were playing in the park when the defendant came into the park. She stated that the defendant approached them while they were playing with Nelson on the culverts in the park. T.L. explained that the defendant touched the front of her underpants in the area between the legs. She testified that when the defendant touched her underpants it made her unhappy and it hurt her. T.L. also testified that she saw the defendant touch her friend T.H. "[o]n the underwears." She explained that the defendant touched T.H. in the same place and in the same manner as he had touched her.

The other victim, T.H., also testified that while she and T.L. were playing in the park, a man approached them and gave them some rocks. She explained that the man touched her and T.L. on the legs, but she could not remember whether he had touched her private parts.

Gregory H. Sorensen, a detective sergeant with the Lincoln Police Department, testified that he interviewed the defendant on April 23, 1989, at the Lincoln Police Department. According to Sorensen, the defendant admitted that he had touched the outside of the underpants of both T.L. and T.H. in the vaginal area. The defendant explained to Sergeant Sorensen that he could feel the vagina and the vaginal opening at the time that he touched both girls.

The defendant contends that his motions for dismissal, directed verdict, and new trial should have been sustained because the evidence was insufficient to sustain a finding of guilty on count II, sexual assault of T.H. Specifically, he argues

the State did not prove that he subjected T.H. to sexual contact.

The crime of sexual assault of a child is defined in § 28-320.01(1): "A person commits sexual assault of a child if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older." "Sexual contact" is defined in Neb. Rev. Stat. § 28-318(5) (Reissue 1989) as

> the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. . . . Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

"Intimate parts" are defined in § 28-318(2) as "the genital area, groin, inner thighs, buttocks, or breasts."

The State's evidence which has been summarized was sufficient to permit the jury to find the defendant guilty beyond a reasonable doubt on both counts. The direct testimony by the two victims described the sexual assaults. The testimony of Nelson, an eyewitness to the incident, corroborated the victims' testimony. Finally, the testimony of Sergeant Sorensen also provided corroborating evidence which, with the direct testimony of the victims and Nelson, was more than sufficient to support the verdicts. The evidence in this case was such that the district court could not properly dismiss the proceedings, direct a verdict of acquittal, or declare a new trial. The defendant's assignment of error is without merit.

In his second assignment of error the defendant contends that the trial court abused its discretion in finding that he is a nontreatable mentally disordered sex offender and that treatment is unavailable in Nebraska.

The record shows that in 1961 Andersen was convicted of child molesting in Scotts Bluff County, Nebraska, for which he was sentenced to 5 years in the Nebraska Penal and Correctional Complex. The record also shows that Andersen was convicted of debauching a minor in 1972 in Scotts Bluff County and was committed to the Lincoln Regional Center until January 1980. Since his discharge from the Lincoln

Regional Center, Andersen has been followed as an outpatient at the Veterans Administration Medical Center in Lincoln, where he receives psychiatric treatment and medication to treat his condition.

Following his present convictions, Andersen was evaluated in accordance with the requirements of Neb. Rev. Stat. §§ 29-2912 and 29-2913 (Reissue 1989) of the mentally disordered sex offender act. Three of the four examiners concluded that Andersen is a mentally disordered sex offender whose disorder is nontreatable. Drs. Sanat Roy and Daniel Ullman stated:

> Mr. Andersen's pedophilia disorder is not treatable within the MDSO Program, given the following. The pedophilia disorder has been refractory to previous attempts at treatment. Even with the years of effort the patient displayed in previous attempts at therapy, he was unable to internalize psychological controls of his pedophilia urges.

Dr. H.L. Balters offered the following opinion:

> There is a treatment facility in the state of Nebraska which is available to the client. In fact, the client has already been there for eight years of his life. Against that sort of backdrop of treatment failure, this worker truly does not believe that the client could benefit from additional placement at that same facility . . . . In other words, after eight years of prior programatic [sic] involvement by the client (then patient), one would expect that whatever the current judicial outcome for Mr. Andersen, he still is likely to become one of the recedevism [sic] statistics later on.

> Therefore, it is this worker's professional opinion that the client is a Mentally Disordered Sex Offender, someone likely to engage in future sexual offenses which will bring harm to someone else. However, this worker does not view the client as being treatable.

Dr. J.B. Bastani offered the following opinion:

> Mr. LeRoy Andersen has the classical pedophile profile. He is resistive to treatment. Treatment recommendation would not be made available in the State, that is testicular enucleation. This may sound

shocking but in view of his poor compliance with medical treatment and the large population of minors at risk, he will repeat the act. . . .

. . . .

I must impress upon the Court the seriousness of Mr. Andersen's problem and short of close supervision with intramuscular injection of female hormone with residence in a nursing home (Veteran's Home), there is lack of anything further available due to his poor past compliance and chronic history of pedophilia.

This court will not disturb a trial court's finding that one is a mentally disordered sex offender whose disorder is nontreatable unless it can be said that such declaration was an abuse of discretion. *State v. Reddick*, 221 Neb. 322, 376 N.W.2d 797 (1985); *State v. Sell*, 213 Neb. 437, 329 N.W.2d 361 (1983).

The present record provides substantial evidence to support the trial court's conclusion that the defendant is nontreatable and that there is no treatment available for him in Nebraska. The trial court did not abuse its discretion in so concluding.

In his third assignment of error, the defendant claims the trial court abused its discretion in sentencing him to a term of 20 months' to 5 years' imprisonment on each count. The penalty for violation of § 28-320.01 is a maximum sentence of 5 years' imprisonment, a $10,000 fine, or both. There is no minimum sentence. A sentence that is within statutory limits will not be disturbed upon appeal absent an abuse of discretion. *State v. Stephens*, 237 Neb. 551, 466 N.W.2d 781 (1991). In view of the defendant's prior convictions involving crimes against children, the sentences imposed were not an abuse of discretion.

The defendant's final assignment of error contends that the trial court erred in ordering his sentences to run consecutively. He argues that his acts were part of a single course of conduct and that, therefore, the sentences imposed should have been concurrent with each other. "It is within the discretion of the trial court to direct that sentences imposed for separate crimes be served consecutively." *State v. Nelson*, 235 Neb. 15, 24, 453 N.W.2d 454, 460 (1990) (citing *State v. Kitt*, 232 Neb. 237, 440 N.W.2d 234 (1989)). This court observed in *State v. Nelson*,

*supra* at 24, 453 N.W.2d at 460:

> The test of whether consecutive sentences may be imposed under two or more counts charging separate offenses, arising out of the same transaction or the same chain of events, is whether the offense charged in one count involves any different elements than an offense charged in another count. The test is whether some additional evidence is required to prove one of the other offenses.

Here, the defendant was charged with two counts of sexual assault of a child. Count I involved the sexual assault of T.L., and count II involved the sexual assault of T.H. The evidence in count II required that the State prove the defendant engaged in sexual contact with someone other than the person whom he was charged with sexually assaulting in count I. As such, proof of count II required "additional evidence." The trial court did not abuse its discretion in imposing consecutive sentences.

There being no merit to the defendant's summarized assignments of error, the judgment and sentences of the district court are affirmed.

AFFIRMED.