IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. HORNER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
BRENDAN C. HORNER, APPELLANT.

Filed October 22, 2013.    No. A-13-420.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, and Timothy M. Eppler for appellant.

Jon Bruning, Attorney General, George R. Love, and Joel R. Rische, Senior Certified Law Student, for appellee.

INBODY, Chief Judge, and IRWIN and RIEDMANN, Judges.

INBODY, Chief Judge.

INTRODUCTION

Brendan C. Horner appeals his plea-based convictions of first degree assault and attempted possession of cocaine with the intent to deliver. We find that the record is insufficient on direct appeal to review his claim that he received ineffective assistance of trial counsel. We review and reject his claim that the sentences imposed upon him were excessive.

STATEMENT OF FACTS

Around 1 a.m. on June 23, 2012, Horner asked Jeffery Holka to give him a ride to 44th and L Streets in Lincoln, Nebraska. During the trip, Holka needed gas for his car, so they stopped at a convenience store located at 4400 O Street. Holka went inside to pay for gas, and upon returning to his car, he heard Horner yelling at a woman, Natasha Keyser, in a nearby car. As Holka was pulling away from the convenience store onto O Street, Horner was still yelling at

- 1 -

Keyser. When they reached the intersection at 44th and O Streets, Holka stopped for a red light. The car in which Keyser was a passenger pulled up either adjacent to or behind Holka's car; this car was being driven by Lawrence Corter.

As Corter's car approached, Horner got out of Holka's car and pulled a handgun from his waist. Horner yelled at Keyser while he was approaching the driver's door of Corter's car. Horner then stepped up to Corter's car and fired one shot at Corter. The bullet entered the left side of Corter's neck, exited, and continued into his right forearm, severing the radial nerve. Corter was transported to a hospital where he underwent surgery, during which a nerve from another area of his body was removed and transplanted to replace the radial nerve. After 8 months of physical therapy, Corter was able to move his right thumb, index finger, and middle finger, but he did not have full mobility or strength, and continued to suffer pain in his arm and hand.

After shooting Corter, Horner ran back to Holka's car, got in, and ordered Holka to drive away. When Holka refused, Horner held the gun to Holka's head and demanded that he drive. Holka did drive for several blocks, but then stopped and pleaded with Horner to consider Holka's wife and children. Horner then held the gun to his own head, and Holka kicked Horner to keep him from shooting himself. Horner then ran out of Holka's car, leaving behind a backpack. Holka contacted the police, relayed the events, and told officers that Horner had left a backpack in his car and asked them to remove it. Horner's backpack was seized by officers, who then searched it, finding a "DMV temporary license issued to . . . Horner, and a purple Crown Royal bag." Inside that bag were two baggies containing a white powder which was tested and determined to be 19.84 grams of cocaine, without packaging.

Horner was charged with first degree assault, use of a firearm to commit a felony, and possession of cocaine with the intent to deliver. Horner filed a motion to suppress evidence discovered during the warrantless search of his backpack, but the motion was denied by the district court after an evidentiary hearing on the matter. Thereafter, pursuant to a plea agreement, Horner pled no contest to first degree assault and to an amended charge of attempted possession of cocaine with the intent to deliver, both Class II felonies. Pursuant to the plea agreement, the charge of use of a firearm to commit a felony was dismissed.

Following the preparation of a presentence investigation report, the court sentenced Horner to 24 to 35 years' imprisonment on the first degree assault conviction and 5 to 10 years' imprisonment on the attempted possession of cocaine with the intent to deliver conviction. These sentences were ordered to be served consecutively, and Horner was given credit for 285 days served. Horner has appealed to this court and is represented by different counsel on appeal than represented him in the lower court.

## ASSIGNMENTS OF ERROR

On appeal, Horner contends that he received ineffective assistance of trial counsel and that the sentences imposed upon him were excessive.

ANALYSIS

*Ineffective Assistance of Counsel.*

Horner contends that his trial counsel was ineffective by failing to adequately represent him during the pendency of his case. He claims that he would have proceeded to trial if not for trial counsel's failure to communicate with him, inadequate preparation for court hearings, and failure to adequately advise him of the consequences of forgoing trial and entering a plea agreement. However, Horner contends that the record on direct appeal is insufficient for this court to review his assignment of error on direct appeal.

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Rocha*, 286 Neb. 256, ___ N.W.2d ___ (2013). When a claim of ineffective assistance of counsel is raised on direct appeal, whether or not it can be resolved is dependent upon whether the record is sufficient to adequately review the question presented for review. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.*

In this case, the record on direct appeal is insufficient to adequately review Horner's claims of ineffective assistance of counsel. Therefore, we decline to address this assignment of error, and the issue is preserved for Horner to pursue in an action for postconviction relief.

*Excessive Sentences.*

Horner also contends that the sentences imposed upon him were excessive. He claims that the district court did not take into consideration the circumstances surrounding the offenses or his life.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Watt, supra*. When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

First degree assault and attempted possession of cocaine with the intent to deliver are both Class II felonies punishable by 1 to 50 years' imprisonment. See, Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012) (classification of felonies); Neb. Rev. Stat. § 28-201 (Cum. Supp. 2010) (criminal attempt); Neb. Rev. Stat. § 28-308 (Cum. Supp. 2012) (first degree assault); Neb. Rev. Stat. § 28-416(7) (Cum. Supp. 2012) (possession of controlled substance with intent to deliver). Horner's sentences of 24 to 35 years' imprisonment on the first degree assault conviction and 5 to 10 years' imprisonment on the attempted possession of cocaine with the intent to deliver conviction are within the statutory sentencing range for Class II felonies.

Despite the fact that his sentences are within the statutory sentencing range for Class II felonies, Horner argues in his brief that alcohol and drugs are a problem for him, causing him to become impulsive, become easily angered, and make poor decisions. In his presentence interview, he admitted that he was under the influence of drugs at the time of the incident. He

further argues that his "prior experiences indicate he is in need of rehabilitation and not a lengthy sentence of incarceration." Brief for appellant at 12. Horner states that "it is clear that [he] is not only committed to rehabilitation, but the public will be protected as long as [he] is able to stay sober." *Id.* at 13.

However, as the presentence investigation report indicates, and Horner admits, his drug problem is longstanding, beginning with drinking alcohol and smoking marijuana at the age of 12. Since that time, Horner has used alcohol, marijuana, "ecstasy," methamphetamine, powder cocaine, prescription opiates, prescription anxiety medications, prescription cough syrup, "acid," and "mushrooms." Further, although Horner has participated in several outpatient treatment programs, he has been unable to maintain sobriety for any longer than 6 or 7 months. Also according to the presentence investigation report, Horner is a 21-year-old single male with no dependents. He has a 12th grade education and has obtained his diploma through the GED program. His adult criminal history includes convictions for straddling lane lines, operating a vehicle without an operator's license, being an inmate of a disorderly house, disturbing the peace, first offense driving under the influence, making a false statement to a police officer, failure to appear, and two convictions for being a minor in possession. Horner was assessed at a very high risk to reoffend, and he scored in the very high or high risk range in the following categories on the assessment: companions, alcohol/drug problem, education/employment, and antisocial pattern.

Although Horner has expressed remorse to the victim and to Horner's own family, he stated that the situation should have never happened, and did not engage in any blaming, justification, or mitigation of responsibility during his presentence interview. Both of the offenses for which Horner stands convicted are serious, and he is fortunate that his actions did not cause Corter's death. Further, Horner received a substantial benefit from his plea agreement, which involved the dismissal of the charge of use of a firearm to commit a felony, a Class IC felony, which carries a mandatory minimum of 5 years' imprisonment and a maximum of 50 years' imprisonment. § 28-105; Neb. Rev. Stat. § 28-1205(1)(c) (Cum. Supp. 2012). The plea agreement also involved the drug offense being amended from a Class ID felony to a Class II felony.

Finally, we address Horner's argument that his sentences should have been ordered to run concurrently because they arose from the same incident. It is within the trial court's discretion to direct that sentences imposed for separate crimes be served consecutively. *State v. Andersen*, 238 Neb. 32, 468 N.W.2d 617 (1991); *State v. Nelson*, 235 Neb. 15, 453 N.W.2d 454 (1990); *State v. Kitt*, 232 Neb. 237, 440 N.W.2d 234 (1989). The test of whether consecutive sentences may be imposed under two or more counts charging separate offenses, arising out of the same transaction or the same chain of events, is whether the offense charged in one count involves any different elements than an offense charged in another count. *State v. Andersen, supra*; *State v. Nelson, supra*. The test is whether some additional evidence is required to prove one of the other offenses. *Id.*

In examining the elements of first degree assault and attempted possession of cocaine with the intent to deliver, it is clear that the offenses involve different elements. A person commits the offense of first degree assault "if he or she intentionally or knowingly causes serious

bodily injury to another person." § 28-308(1). Regarding the drug offense, as Horner was charged in the amended information, the State was required to prove that Horner

> did knowingly or intentionally attempt to (a) manufacture, distribute, deliver, or dispense or possess with intent to . . . distribute . . . a controlled substance; or (b) create, distribute, or possess with intent to distribute a counterfeit controlled substance with respect to cocaine or any mixture or substance containing a detectable amount of cocaine in the quantity of at least ten grams but less than twenty-eight grams.

First degree assault and attempted possession of cocaine with the intent to deliver involve entirely different elements; therefore, consecutive sentences may be imposed for these offenses and the district court did not abuse its discretion in doing so.

In sum, based upon the facts that the sentences imposed were within the statutory sentencing range for Class II felonies, the benefits that Horner received from the plea agreement, his criminal history, his risk to reoffend, and the seriousness of the offenses, the sentences imposed were not an abuse of discretion.

## CONCLUSION

Because the record is insufficient for this court to address Horner's claim of ineffective assistance of counsel on direct appeal, we do not reach that issue. We do find that there is no merit in Horner's claim that the sentences imposed were excessive, and therefore, his convictions and sentences are affirmed.

AFFIRMED.