STATE OF NEBRASKA, APPELLEE, V. GARY R. CLARK, APPELLANT.
423 N.W.2d 471

Filed May 20, 1988.   No. 87-475.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly, for appellant.

Gary R. Clark, pro se.

Robert M. Spire, Attorney General, and Marie C. Pawol, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from the district court for Douglas County. Separate informations were filed in the district court against defendant, Gary R. Clark, and Roy Nist. The charges against defendant were filed in two separate informations. The first charged a sexual assault in the first degree on September 6, 1986, and the second charged the use of a knife in the commission of that felony. The two informations against defendant were consolidated for trial without objection by defendant.

The information against Roy Nist charged the same crimes on the same date. The informations against defendant and the information against Nist were consolidated for trial, over defendant's objection.

After jury trial, defendant and Nist were found guilty. Defendant was sentenced to a term of 10 to 15 years on the sexual assault charge and to a consecutive term of 5 to 10 years on the charge of use of a knife in the commission of a felony.

Defendant appeals, contending that the district court erred in sustaining the State's motion to consolidate the cases against the defendant and codefendant Nist; in overruling the defendant's motion in limine to keep out of evidence the circumstances and statements concerning the defendant's arrest; in overruling defendant's motion to suppress certain statements; and in imposing an excessive sentence. We affirm.

The record shows that in the early evening of September 6, 1986, the victim, a 17-year-old male, was sitting outside of a gas station in Omaha waiting for a telephone call. He was approached by the 35-year-old defendant and the defendant's 27-year-old nephew, Roy Nist. After initial conversation, defendant offered the victim a drink from a pint of vodka which defendant had taken out of his coat pocket. The parties

then moved behind the gas station, where they conversed and drank.

The group decided to go to Nist's nearby apartment. There, the parties continued to engage in friendly conversation. After about 15 minutes, however, the defendant began to make sexual advances toward the victim. Nist then locked the apartment door. The victim then took a knife out of his back pocket in order to put it in his jacket. At defendant's request, the victim gave defendant the knife.

The victim testified defendant told the victim that he was going to "cut [him] up." The defendant then pushed the victim toward the back of the apartment, into the bathroom. While Nist stood nearby with the knife, the defendant ordered the victim to take off his clothing. Defendant struck the victim in the back of his head and neck until he complied with defendant's order. The defendant then forced the victim to engage in both anal and oral sex, while Nist stood nearby with the knife at the victim's throat. Nist left the bathroom. Defendant then forced the victim into Nist's bed, where Nist lay "sleeping or passed out," and again sexually assaulted the victim. The victim was able to escape after the defendant fell asleep. As the victim was leaving the apartment, he encountered Nist's neighbors. He informed the neighbors that he had been raped, and the neighbors helped the victim call the police.

Police officers arrived at the scene, where they found the defendant lying naked on the bed with Nist, who was clothed. The officers informed both parties that they were under arrest. At that point, the defendant and Nist became very violent and shouted obscenities. After a violent struggle, the defendant was eventually taken to the police station. The defendant refused to dress and was taken to the police station with a sleeping bag draped over his unclothed body.

The defendant and Nist were transported to the police station in separate vehicles. In the police cruiser, Nist "would kind of mellow out, and then he would become violent again, kicking around." The officers transporting Nist did not give Nist any *Miranda* warnings, nor did they question him. Suddenly, Nist stated, "[D]id that kid call you? Hey, man, he was scared. You should have seen his face and heard him

scream. I bet he was in pain afterwards. I fucked his face, I fucked his mouth, I fucked him in the ass. . . . Yeah, man, it was something else."

At the police station, the defendant was informed of his *Miranda* rights by Officer Mary Eggers. In response to the question, "Knowing your rights in this matter, are you willing to make a statement to me now?" Clark responded, "You tell me what happened." After Officer Eggers had routinely explained the allegations of the charge, defendant told the officer that he did not "have sex with guys," and requested a lawyer. Officer Eggers then informed the defendant that he was to be booked on a sexual assault charge. Defendant responded, "Is there any way I can get out of this?" Without any further questioning by Officer Eggers, the defendant asked, "Did he say we forced him to come there?" There was no further conversation. The defendant again asked for a lawyer, and no further conversation took place.

The physician who examined the victim soon after the incident testified that the victim's injuries were consistent with the victim's contentions.

In his first assignment of error, the defendant contends that the district court erred in sustaining the State's motion to consolidate the cases against defendant and Nist. Prior to trial, defendant objected to the State's motion to consolidate, asserting that the statement made by Nist while en route to the police station would unfairly incriminate the defendant, particularly if Nist had used the word "we" rather than "I," in describing his actions. Evidence at the trial was that Nist used the word "I." The court sustained the motion to consolidate, and the cases were consolidated for trial. We determine the court did not err in so acting.

Neb. Rev. Stat. § 29-2002(3) (Reissue 1985) states in part: "The court may order two or more indictments, informations, or complaints, or any combination thereof, to be tried together if . . . the defendants, if more than one, could have been joined in a single indictment, information or complaint." In *State v. Vrtiska*, 225 Neb. 454, 465, 406 N.W.2d 114, 122 (1987), we stated:

If the offenses charged are of the same or similar

character, or are based on the same act or transaction, the offenses may be joined in one trial. See, *State v. McGuire,* 218 Neb. 511, 357 N.W.2d 192 (1984); *State v. Cole,* 218 Neb. 1, 352 N.W.2d 154 (1984); *State v. Rodgers,* 186 Neb. 633, 185 N.W.2d 448 (1971). A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed in the absence of an abuse of discretion.

There is no constitutional right to a separate trial. The right is statutory, as set out in § 29-2002(4), and depends upon a showing that prejudice will result from a joint trial. *State v. Clark,* 189 Neb. 109, 201 N.W.2d 205 (1972). The propriety of a joint trial involves two questions: (1) whether the consolidation is proper because the defendants could have been joined in the same indictment or information, and (2) whether there was a right to severance because the defendants or the State would be prejudiced by an otherwise proper consolidation of the prosecutions for trial. *State v. Brehmer,* 211 Neb. 29, 317 N.W.2d 885 (1982). The burden is on the party challenging the joint trial to demonstrate how and in what manner he or she was prejudiced. *State v. Anderson and Hochstein,* 207 Neb. 51, 296 N.W.2d 440 (1980).

With regard to the first question, we have held that " 'two charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.' " *State v. Brehmer, supra* at 37, 317 N.W.2d at 890. The charges in the present case could have been joined in the same information. Both defendant and Nist were charged with the same offenses, and the same facts needed to be adduced in order to prove each of the offenses. The offenses are part of a factually related transaction or series of events in which both of the defendants participated. Cf. *State v. Lee,* 227 Neb. 277, 417 N.W.2d 26 (1987).

Joinder was proper in the present case, and we further determine that the defendant has failed to demonstrate that he was prejudiced by the joint trial. The testimony at trial, as related by the police officers in whose presence Nist made the statement set out above, showed that the statement referred

only to Nist's involvement in the charged offenses. Even assuming, however, that the statement made by Nist was incriminating toward the defendant, we determine that the statement was not erroneously admitted. In *Bruton v. United States*, 391 U.S. 123, 885 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), the Supreme Court held that the admission of a codefendant's statement inculpating another defendant at a joint trial constitutes error where the declarant codefendant does not testify in the trial, regardless of the fact that the trial court gave instructions that the incriminating statement could be considered only against the declarant codefendant. See, also, *State v. Saltzman*, 194 Neb. 525, 233 N.W.2d 914 (1975). *Bruton* would not control this case because Nist testified at the trial, as did defendant Clark, and defendant had every opportunity to cross-examine Nist. Further, the court instructed the jury that evidence relating to one defendant cannot be considered against the other defendant. Defendant's first assignment of error is without merit.

In his second assignment of error, the defendant contends that the district court erred in "overruling a motion in limine to keep out of the State's case in chief the circumstances and statements surrounding the arrest of the Defendant." After a hearing prior to trial, the court held that the defendant's statements to the police were spontaneous and volunteered, and therefore admissible at trial; and that the circumstances surrounding defendant's arrest were also admissible.

We first note that the denial of a motion in limine does not in itself constitute reversible error. *State v. Tomrdle*, 214 Neb. 580, 335 N.W.2d 279 (1983). When such a motion is denied, the moving party must also object at trial and base his or her complaint on the trial record. *Tomrdle, supra*. Error may not be predicated on a ruling which admits evidence unless a substantial right of a party is affected and a timely objection appears of record stating the specific ground of objection, if the specific ground was not apparent from the context. Defendant has not, therefore, set out an accurate assignment of error, but since defendant made a trial objection to some of the testimony, defendant's contention will be reviewed.

As stated in 22A C.J.S. *Criminal Law* § 628 at 472 (1961),

"Ordinarily, evidence of the arrest of accused, and of the attending circumstances, is relevant and admissible where such circumstances logically tend to connect accused with the perpetration of the crime . . . ." In this case, the arrest of defendant was particularly relevant. When the first police cruiser arrived, the victim met the two officers from that cruiser in the alley behind the building containing the apartment where the victim said the assault occurred. The victim told the officers that the two men who assaulted him were asleep in a bed in one of the apartments and that one of the sleeping men was clothed and the other naked. Other officers arrived, and a search was made of the row of apartments by the officers' shining a flashlight into the apartments that did not have the solid door closed. In that search the officers found defendant, unclothed, and Nist, clothed in bib overalls and a shirt, asleep on a bed in one of the apartments.

The officers shouted "police," entered the apartment, and Officer Donald Casey quickly put one handcuff on Nist. Officer Casey testified that defendant then jumped up with his fists clenched and began jumping around and screaming, but Casey then subdued and handcuffed him.

Officer Casey then assisted Officer James Alexander in arresting defendant. Casey testified that defendant was "bucking and kicking . . . just totally trying to get away, kicking and screaming, probably 10 to 15 minutes total time." Defendant was naked the whole time, although the officers tried to get him to put on some clothes. Defendant was finally removed from the apartment with the sleeping bag draped over him.

Officer Alexander testified that in the apartment, after he shook defendant's leg to waken him, defendant "lunged up from the bed" and stated to the officer, "I'm going to fuck you in the ass." When asked to describe what happened next, Officer Alexander succinctly testified, "At that time the fight was on." When defendant was finally subdued, Officer Alexander testified, in full agreement with Officer Casey, defendant was transported to the police station with only a sleeping bag draped over him.

Defendant contends that the evidence of his arrest and the

attendant circumstances was improperly admitted. As to the arrest itself, that evidence was admissible, as stated above, because it was relevant to the identification of defendant as one of the perpetrators of the crime. As to defendant's conduct during the arrest process, evidence of such conduct, in this case, is admissible as an excited utterance and as evidence tending to show defendant's state of mind at the time the alleged crime was committed, just shortly before his arrest, and showing defendant's consciousness of guilt. Defendant's second assignment of error is without merit.

In his third assignment of error, the defendant contends that the district court erred in overruling the defendant's motion to suppress certain of his statements. The motion to suppress is not in the record before us, but the motion was apparently addressed to statements made at the police station. In ruling on defendant's oral motion to suppress prior to trial, the court found that the statements made to the officers were voluntary and spontaneous, and therefore admissible.

We first note that the trial court's findings of fact with regard to the correctness of rulings on motions to suppress will not be set aside unless clearly wrong. *State v. Swoopes*, 223 Neb. 914, 395 N.W.2d 500 (1986).

The record shows, as set out above, that at the police station, investigating Officer Eggers duly advised the defendant of his *Miranda* rights. There is no dispute that during his conversation with Officer Eggers, the defendant made two requests for an attorney. Defendant contends that once he requested an attorney, all "further questionning [sic]" should have stopped. Defendant further contends that Officer Eggers questioned the defendant in order to "elicit a response." Brief for Appellant at 8-9.

Once an accused requests the assistance of counsel, the interrogation of that individual must stop, but the protection afforded the accused once counsel has been requested may be waived if done knowingly, freely, and voluntarily. *State v. Last*, 212 Neb. 596, 324 N.W.2d 402 (1982). *Miranda* does not protect an accused, even though he has requested counsel, from a spontaneous admission made under circumstances not induced by the investigating officers or during conversation not initiated

by the officers. *State v. Last, supra; State v. Pittman*, 210 Neb. 117, 313 N.W.2d 252 (1981). Voluntariness is the ultimate test to use an accused's statement, admission, or confession as evidence in a criminal prosecution, and depends on " 'the totality of the circumstances.' " *State v. Robertson*, 219 Neb. 782, 787, 366 N.W.2d 429, 433 (1986). A determination by the trial court that a statement was made voluntarily will not be disturbed, absent an abuse of discretion. *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983).

The record of the hearing on defendant's motion to suppress shows that Officer Eggers propounded only one question to the defendant. After the defendant was advised of his *Miranda* rights, Officer Eggers asked the defendant if he was willing to make a statement. The defendant responded by advising Eggers that he did not remember anything, and saying, "You tell me what happened." Officer Eggers advised defendant of the allegations that the victim had made. Defendant then said, "I don't have sex with guys." Defendant said he "wanted to see his lawyer." Officer Eggers then advised defendant that he was to be booked on the charge of first degree sexual assault. The officer asked no further questions. Defendant then said, "Is there any way I can get out of this?" Defendant immediately said the three were drinking together and then asked the officer, "Did he [the victim] say we forced him to come there?" The officer then again advised defendant of the victim's allegations. Defendant now contends that all "further questionning [sic]" should have stopped at the point defendant requested a lawyer. Brief for Appellant at 8. Our examination of the record shows that the police questioning did stop. Defendant himself engaged in questioning Officer Eggers. As the statements made by the defendant were freely and voluntarily made, there was no abuse of discretion on the part of the trial court in admitting the statements. Defendant's third assignment of error is without merit.

In his fourth and final assignment of error, the defendant claims that the sentence imposed by the district court was excessive. Defendant was sentenced to 10 to 15 years on the sexual assault charge and 5 to 10 years on the use of a knife to commit a felony charge. First degree sexual assault is a Class II

felony, punishable by a term of imprisonment of from 1 to 50 years. The use of a knife to commit a felony is a Class III felony, punishable by a term of imprisonment of from 1 to 20 years. Defendant's sentences were well within the statutory limits. A sentence imposed within the statutory limits will not be disturbed on appeal, absent an abuse of discretion. *State v. Costanzo*, 227 Neb. 616, 419 N.W.2d 156 (1988); *State v. Perdue*, 222 Neb. 679, 386 N.W.2d 14 (1986).

There was sufficient competent evidence upon which the jury could find the defendant guilty of the crimes charged, and there was no error in the trial of the case. The judgment of the district court is affirmed.

AFFIRMED.