STATE OF NEBRASKA, APPELLEE, V. JOSEPH L. NELSON, APPELLANT.
453 N.W.2d 454

Filed April 6, 1990.    No. 89-214.

16

Gerard A. Piccolo, Deputy Hall County Public Defender, for appellant.

Robert M. Spire, Attorney General, Jill Gradwohl Schroeder, and, on brief, Susan M. Ugai for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Following a jury trial in the district court, the defendant was found guilty of first degree sexual assault and kidnapping. After the trial court determined that he was not a mentally disordered sex offender, defendant was sentenced to imprisonment for 15 to 25 years for the sexual assault and to a consecutive term of 15 to 25 years for the kidnapping. Both of these crimes are Class II felonies, providing for sentences of 1 to 50 years.

The defendant assigns as error (1) the admission of evidence

concerning a prior bad act of the defendant, (2) the denial of defendant's request for a psychiatric examination of the victim, (3) the exclusion of evidence of a specific instance of the victim's past sexual behavior, and (4) the excessiveness of the sentences. We affirm.

On March 6, 1988, defendant and several of his friends went to Max Magruder's, a restaurant and bar located in the Conestoga Mall in Grand Island. The defendant testified that two women customers, for whom he ordered several drinks throughout the evening, joined them at their table. He himself had approximately six drinks during the course of the evening. Later in the evening, he and one of the two women, who he said was definitely intoxicated, went for a walk in the mall area. When he came back to the table, he noticed that his keys were missing. A short time later, he and this same woman went to the restroom. He said he had his arm around her and then asked her if she had his keys. He said he grabbed her by the arm and said he would like to have his keys back. She started to cry, so, he said, he let her go. He denied that he ever took her into the men's restroom.

A short time later, the defendant saw the victim, who was a waitress at Magruder's, walk out the door. According to his testimony, he followed her out and was going to ask her for a ride. The defendant claims that he got into her car on the passenger's side, that they started kissing and petting, and that she told him she knew a place in the country where they could park. His testimony indicates that the two of them engaged in sexual relations which were voluntary on the part of both of them and that the victim then drove the defendant back to town. Shortly thereafter, he was confronted by a police officer.

According to the victim, as she was getting into her car she saw the defendant running toward her car. She got in the car, and eventually the defendant forced his way into the driver's side of her automobile and commenced to drive off. She tried to escape once by opening the passenger door, but the defendant reached over and pulled her back. He forcibly held onto her with one hand. During the time that they were driving, the defendant forced the victim to perform several sexual acts. He did this by threatening to "bash in [her] brains."

The victim testified that when they arrived at a spot in the country where there was a driveway, the defendant proceeded to assault her with his fingers, his mouth, and his penis. The defendant then told the victim to put her clothes back on, and he drove them back to town, he got out of her car, and the victim drove home.

Both of the victim's parents testified that she told them she had been raped. The police were called, and the victim's mother went with her to the hospital.

The woman for whom the defendant had been buying drinks earlier in the evening, and with whom the defendant said he walked around the mall and later toward the restrooms, testified. She told how during the course of this evening on which the alleged assault took place, she was followed to the restroom by the defendant. According to her, the defendant grabbed her hand, took her into the men's restroom, and held her while he used the toilet. He then unzipped her jeans, but when she continued crying he let her go.

The physician director of the St. Francis Medical Center emergency department testified. He related the history given him by the victim, which agreed generally with her testimony. As a result of his examination, he found scratches on the back of her left calf and on her back and an abraded area on the perineum from which serum was seeping. He was unable to find any evidence of sperm in the vagina.

The victim's personal physician examined her on March 7, 1988. He testified over objection that the victim told him that she "had been raped the night before." The physician's examination revealed a tender bruised area on the left shoulder near the neck and a bruised area over the right perineal region, the right side of the crotch. He continued to testify that other than the fact that she was somewhat upset, other findings were negative, although she complained of a sore tailbone. The doctor testified that he could not tell when the trauma occurred that caused the bruising, but did say that his impression was that it was not more than 2 days earlier.

The basis for defendant's request for a psychiatric examination of the victim, which was denied, was an affidavit that a coworker of the victim's would testify that within a week

after the alleged assault the victim had told her that following the incident, the victim was left out in the country and her car was found in town. Defendant's counsel argued that this is inconsistent with prior statements of the victim to law enforcement officials and her deposition and preliminary hearing testimony and that based on these inconsistent stories, he believes the victim has emotional problems and disorders and that she had fabricated her entire story.

The issue as to the victim's prior sexual activity arose as the result of a deposition of one of the victim's examining physicians. During that examination, she admitted having had sexual intercourse 3 days prior to the alleged assault. Because neither of the examining physicians could determine exactly when the victim's injuries occurred, it is defendant's position that the injuries could have resulted from the admitted sexual intercourse and that the assault did not happen.

Prior to trial, the defendant filed a motion pursuant to Neb. Rev. Stat. § 28-321 (Reissue 1989) to introduce evidence of this past sexual behavior. This motion was denied. During the course of the trial, defendant requested permission to make an offer of proof with regard to his earlier motion concerning the relevancy of the prior sexual acts of the alleged victim. The offer of proof was denied.

Defendant's complaints concerning the admission of evidence of a prior bad act by him related to his experience with the woman in or near the restrooms when, she testified, he unzipped her jeans. However, we do not reach that assignment of error because of the failure of the defendant's counsel to interpose an objection when the evidence was offered.

When a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence, previously sought to be excluded by the motion, is offered during trial and cannot predicate error on the admission of evidence to which no objection was made when it was offered. *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989). As stated by this court in *State v. Tomrdle*, 214 Neb. 580, 585, 335 N.W.2d 279, 283 (1983):

> A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. . . . "[I]t is not

the office of a motion *in limine* to obtain a final ruling upon the ultimate admissibility of evidence . . . but is rather to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to a jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself." . . . "It [the motion in limine] serves the useful purpose of raising and pointing out before trial certain evidentiary rulings the court may be called upon to make during the course of trial. . . . It is not a ruling on evidence and should not, except on a clear showing, be used to reject evidence. It adds a procedural step to the offer of evidence."

(Citations omitted.)

The denial of a motion in limine does not in itself constitute reversible error. *State v. Clark*, 228 Neb. 599, 423 N.W.2d 471 (1988). When such a motion is denied, the moving party must also object at trial and base his or her complaints on the trial record. *State v. Clark, supra.*

When the witness was called who was the victim of the alleged zipper incident, but before she gave any testimony, defense counsel stated to the court, out of the jury's presence: "Your honor, I would renew my objection and my motion in limine, which was filed previously with this Court with regard to this testimony as being irrelevant, highly prejudicial. And this is alleged uncharged misconduct, which is inadmissible in evidence under the Nebraska statutes, Your Honor."

The motion was again overruled, and the witness eventually testified, without objection being made, to the zipper incident. Defendant, having failed properly to preserve the error by objecting to the introduction of the evidence at the appropriate time, cannot now be heard to complain about the introduction of the evidence.

Addressing defendant's second assignment of error, the granting of a request for a psychiatric evaluation of the victim falls within the discretionary power of the trial court. In *State v. Maestas*, 190 Neb. 312, 207 N.W.2d 699 (1973), this court discussed the power of the trial court to require such an examination, but did not clearly hold that the trial court has

such power. The court stated: "We hold that *if* the court has inherent power to require the complaining witness in a prosecution for a sex crime to submit to psychiatric examination, nonetheless it did not under the showing here abuse its discretion in denying the examination." (Emphasis supplied.) *Id.* at 314, 207 N.W.2d at 700. One of the factors considered by the *Maestas* court in determining that there was no abuse of discretion was that the testimony of the prosecutrix did not bear any obvious indications of unreliability or mental aberration.

Courts in other jurisdictions have held that a trial court does have discretionary power to compel a psychiatric evaluation, but only for compelling reasons. See, *State v. Lederer,* 99 Wis. 2d 430, 299 N.W.2d 457 (1980), *questioned on other grounds, State v. Feela,* 101 Wis. 2d 249, 304 N.W.2d 152 (1981); *State v. Buckley,* 325 N.W.2d 169 (N.D. 1982); *State v. Klueber,* 81 S.D. 223, 132 N.W.2d 847 (1965) (the court is permitted to compel a psychiatric evaluation upon a substantial showing of need and justification).

The purpose of a psychiatric examination in a case involving a sex offense is to detect any mental or moral delusions or tendencies causing distortion of the imagination which would affect the probable credibility of the complaining witness. *State v. Reiman,* 284 N.W.2d 860 (S.D. 1979). However, as stated by the North Dakota Supreme Court:

> In actions involving sex crimes, the complainant is not the person being tried. The proceedings should not put the complaining witness on trial to shift the attention away from the accused. Neither should the trial be conducted to unnecessarily subject the complaining witness to additional trauma. However, we must also recognize the right of one accused of a sex offense to have a fair trial. We believe these competing principles require that we follow what appears to be the majority rule that the trial court has discretion to order a psychiatric examination of a complaining witness based upon compelling reasons established on the record, but not for a mere fishing expedition.

*State v. Buckley, supra* at 171.

Defendant's basis for requesting such an examination of the complaining witness in this case relates to the apparent inconsistency in her recitation of the events of the alleged assault to the police and upon the witness stand, as compared to the description which her coworker claims the victim gave to her. Defendant argues in his brief:

> Perhaps the inconsistency has a logical explanation. Perhaps the inconsistency is a symptom of some medical disease or mental illness. One does not know. However a mental examination would help in determining the source of the inconsistency. Consequently, the Court abused its discretion in not permitting the examination.

Brief for appellant at 15-16.

Such a rule would justify a mental examination every time a witness appeared to have given conflicting stories. Defendant failed to make any showing casting doubt about the victim's mental capacity as a witness. The real question was one of credibility and weight for the jury to decide. See *State v. Lederer, supra* at 463.

Section 28-321(2) provides:

> Evidence of a victim's past sexual behavior shall not be admissible unless such evidence is: (a) Evidence of past sexual behavior with persons other than the defendant, offered by the defendant upon the issue whether the defendant was or was not, with respect to the victim, the source of any physical evidence, including but not limited to, semen, injury, blood, saliva, and hair . . . .

It is defendant's contention that because the victim had admitted during the taking of her history by the emergency room physician that she had engaged in sexual intercourse 3 days before this alleged assault, such evidence was relevant to the issue of whether defendant was the source of the victim's physical injuries, i.e., the bruising about the left shoulder and the perineum and the scratches on the leg and back.

In *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985), this court had its first opportunity to examine § 28-321. In the course of its opinion, the court said:

> Patterned on federal Rule 412, § 28-321(2) excludes evidence of a victim's past sexual behavior unless evidence

"offered by the defendant" at an in camera hearing shows that (1) the victim's past sexual behavior with anyone other than the defendant has some bearing on the question whether the defendant is the source of physical evidence in the prosecution for sexual assault . . . .

*State v. Hopkins, supra* at 375, 377 N.W.2d at 116. The purpose of the statute was to protect sexual assault victims from grueling cross-examination concerning their previous sexual behavior, which often elicited evidence of questionable relevance to the case being tried. See *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986).

The record does not contain a transcript of the testimony taken during the in camera hearing held on defendant's motion. The journal entry in which the trial court held that the evidence was inadmissible notes that an in camera hearing was held and that exhibits 2 and 3 were received. These two exhibits were the depositions of the emergency room physician and the victim's personal physician.

The personal physician testified in his deposition that he did not feel that the bruises which previously have been referred to were caused by trauma occurring 3 to 4 days prior to his examination, but, rather, that they occurred not more than a day before. The emergency room physician noted that the victim had a sore rectal area, and he observed scratches on her back and left calf and serum seeping from her rectal area, which was abraded or injured. In his opinion, the scratches looked fresh, like they could have occurred in the last several hours of that evening.

The record discloses no other evidence relevant to the inquiry as to whether the injuries could have occurred as the result of a prior sexual encounter as distinguished from a sexual assault by the defendant. The evidence presented to the trial court failed to support any inference that the victim's injuries were the result of the prior sexual intercourse. The relevance of the evidence sought to be offered by the defendant not having been established, it cannot be said that the trial court abused its discretion in excluding the evidence of the earlier sexual encounter.

Generally, it is within the trial court's discretion to admit or

exclude evidence on the basis of relevancy, and such rulings will be upheld on appeal absent an abuse of discretion. *State v. Thomas*, 232 Neb. 490, 441 N.W.2d 186 (1989); *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989). A conviction will not be set aside in the absence of a showing that an error prejudiced the defendant. *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987).

Finally, the defendant contends that imposition of consecutive sentences of 15 to 25 years is an abuse of discretion. It is well established that a sentence within statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Von Busch*, 234 Neb. 119, 449 N.W.2d 237 (1989).

The fact that the sentences are consecutive rather than concurrent does not constitute an abuse of discretion. It is within the discretion of the trial court to direct that sentences imposed for separate crimes be served consecutively. *State v. Kitt*, 232 Neb. 237, 440 N.W.2d 234 (1989). The test of whether consecutive sentences may be imposed under two or more counts charging separate offenses, arising out of the same transaction or the same chain of events, is whether the offense charged in one count involves any different elements than an offense charged in another count. The test is whether some additional evidence is required to prove one of the other offenses. *State v. Lewchuk*, 232 Neb. 229, 440 N.W.2d 229 (1989). Since additional evidence is required to prove the offense of kidnapping besides that necessary to prove the offense of sexual assault, consecutive sentences may be imposed. See, Neb. Rev. Stat. § 28-319 (Reissue 1989); Neb. Rev. Stat. §§ 28-312 and 28-313 (Reissue 1989).

As to the length of the sentences, it is well established that

"[i]n imposing a sentence a trial court should consider inter alia the defendant's age, mentality, education, experience, and social or cultural background, as well as his past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime."

*State v. Maeder*, 229 Neb. 568, 574, 428 N.W.2d 180, 184

(1988). Furthermore, " '[t]he seriousness of the offense is an important factor in the setting of a sentence,' and '[e]vidence as to a defendant's life, character, or previous conduct is highly relevant to the determination of a proper sentence.' " *Id.*

Defendant was 39 years old at the time of the crimes. He obtained a GED at the age of 22. By his own report, he was arrested for assault and battery at the ages of 17 and 19. He has a history of speeding violations, and his prior convictions include destruction of city property (amended from third degree assault on an officer and resisting arrest), driving while intoxicated, four counts of issuing bad checks, and third degree assault by mutual consent (amended from third degree assault). Defendant has been an alcoholic since he was a teenager.

Sexual assault is a crime of violence. Defendant repeatedly terrorized the victim with threats that he would bash her head in if she did not do what he instructed, and he forced her to perform several humiliating sexual acts with him. Although she did not suffer permanent physical injury, the victim did suffer psychological trauma. She is afraid to go out alone, especially at night, is afraid of anyone whom she does not know being close to her, is extremely afraid of anyone with a similar look or build to defendant, quit her job because she was uncomfortable with crowds and people who were drinking, and sought the assistance of counseling. Her parents had to buy her another car as she could not bring herself to drive or be in the one in which she was sexually assaulted.

Considering the nature of defendant's acts, his past record, and the statutory limits for the punishment of the offenses, it cannot be said that the sentences imposed by the trial court were an abuse of discretion. Although it is impossible to "color-match" cases, this case is not unlike *State v. Maeder, supra*, where the same sentences were imposed for the same crimes.

The judgment of the district court is affirmed.

AFFIRMED.