STATE OF NEBRASKA, APPELLEE, v. KENNETH LEROY WELCH,
APPELLANT.
490 N.W.2d 216

Filed October 16, 1992.    Nos. S-91-297, S-91-298, S-91-306.

Francis L. Goodwin, of Baron, Sar, Goodwin, Gill & Lohr, for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The defendant, Kenneth Leroy Welch, was charged in separate informations with first degree sexual assault (case No. 91-297), kidnapping (case No. 91-298), making terroristic threats (case No. 91-306), and use of a weapon to commit a felony. The jury returned verdicts of guilty on all charges except the weapon charge. The defendant was sentenced to concurrent terms of 10 to 20 years' imprisonment on the assault and kidnapping charges, and 15 to 36 months' imprisonment on the terroristic threats charge.

The defendant has appealed and contends that the trial court erred in refusing to order a psychiatric examination of the victim, in receiving evidence of a previous conviction of the defendant for a similar offense, in permitting a police officer to testify concerning mannerisms exhibited by the defendant during interrogation, in failing to sustain the defendant's motion for a mistrial, in refusing to permit the defendant to introduce evidence of prior alleged sexual assaults of the victim, and in instructing the jury that it could convict the defendant on the basis of the victim's inability to resist or appraise the nature of her conduct.

The victim was a 26-year-old single woman who lived in Sioux City, Iowa, with her three children and a boyfriend. The assault took place in Nebraska on January 19, 1990. At the beginning of the trial, the defendant stipulated that he had sexual intercourse with the victim on January 19.

There was evidence from which the jury could find that the victim, after donating plasma on the morning of January 19, started drinking at about noon. She had consumed about 18 to 20 cans of beer before encountering the defendant at approximately 10:30 p.m. outside the Blue Mill tavern in Sioux

City.

The victim felt sick, so she went outside the tavern and was vomiting behind a phone booth in front of the tavern when the defendant came up behind her and asked whether she was "okay." The defendant then offered her a ride home, which she accepted. They stopped at a convenience store along the way, where the defendant bought the victim a pack of cigarettes and a six-pack of Coca-Cola.

They then proceeded toward the victim's home, but did not stop there. The victim asked the defendant to stop, but he refused and suggested that they drive around for a while so she could clear her head. The victim suggested that they stop at a bar they had passed, saying that her sister might be there, but the defendant refused and drove onto the interstate and proceeded to the defendant's home near Hubbard, Nebraska.

After they had passed the last exit to South Sioux City, Nebraska, the defendant ordered the victim to disrobe. When she refused, he hit her in the mouth. According to the victim, the defendant then pulled a gun from beside the driver's door and threatened to kill her if she did not comply with his requests. The victim then removed her clothes. The outside temperature at that time was about 18 degrees.

After turning onto a dirt road, the defendant unzipped his pants and forced the victim to perform oral sex. When they arrived at the defendant's residence, he grabbed the victim by her hair and pulled her out of the truck while she was still naked. After they had entered the house, the defendant again forced the victim to perform oral sex and have sexual intercourse with him in various positions. The defendant also forced the victim to perform other perversions and attempted to penetrate the victim anally.

Later, the defendant returned to Sioux City, where he let the victim out near a bar. As the defendant was pushing the victim out the passenger door of the truck, she noticed an envelope in its seat with his name and address on it.

After the victim told her boyfriend and her sister that she had been sexually assaulted, her boyfriend insisted that she go to the hospital and be examined. At the hospital she was examined by Dr. Joseph Van Richards.

Dr. Van Richards testified that when he examined the victim, he found that she had a cut inside her lip which was consistent with being hit in the mouth. Dr. Van Richards observed no other trauma on the victim's body and found no signs of laceration or bruising in the vaginal area.

Dr. Van Richards testified that a blood test, which was taken approximately 9 hours after the victim had had her last drink, showed that the victim's blood alcohol content was .116 of 1 gram by weight of alcohol per 100 milliliters of blood. Dr. Van Richards estimated that at the time of the alleged offense, the victim's blood alcohol level would have been approximately .236.

With respect to the defendant's request that the trial court order a psychiatric examination of the victim, "The purpose of a psychiatric examination in a case involving a sex offense is to detect any mental or moral delusions or tendencies causing distortion of the imagination which would affect the probable credibility of the complaining witness." *State v. Nelson*, 235 Neb. 15, 21, 453 N.W.2d 454, 458 (1990). The determination of whether to grant a request for a psychiatric evaluation of the victim is a matter of discretion for the trial court and will not be overturned absent an abuse of discretion. *Id.* The trial court may order a psychiatric examination of the victim when the record establishes compelling reasons, " 'but not for a mere fishing expedition.' " *Id.* at 21, 453 N.W.2d at 458, quoting *State v. Buckley*, 325 N.W.2d 169 (N.D. 1982).

In *State v. Maestas*, 190 Neb. 312, 207 N.W.2d 699 (1973), this court affirmed the trial court's denial of the defendant's request to have the victim examined by a psychiatrist when the testimony of the victim did not bear any obvious indications of unreliability or mental aberration. In this case, the defendant failed to demonstrate a compelling reason to have the victim examined by a psychiatrist, and the victim's testimony does not bear any obvious indications of unreliability or mental aberration. The trial court did not abuse its discretion in refusing the defendant's request.

The defendant contends that the trial court erred in allowing a witness to testify, over the defendant's objections, as to the defendant's sexual assault of her which occurred 21 years earlier

in California.

That witness testified that when she was 18 years old and was walking to her grandmother's house just after dark, a vehicle approached her. The defendant, who was the driver, opened the passenger door from the inside, pointed a gun at her, and told her to get inside. After she got in, the defendant used his left hand to place the gun between the driver's door and the seat. He then drove to a park and began to undress her. When she resisted, the defendant hit her and told her that he was going to sexually assault her. The defendant then forced her to perform oral sex on him. Later, she was able to escape, and reported the matter to the police. She testified that the defendant was prosecuted for this crime and served a short sentence.

The trial court instructed the jury that the testimony of that witness "will be received only for the limited purpose of helping you to decide . . . motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. You may not in any fashion use this evidence in considering whether the defendant in this case acted in conformity therewith."

The defendant argues that the trial court erred in admitting the California assault victim's testimony because that evidence was inadmissible under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1989), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The State contends that the California victim's testimony was offered for the purpose of proving motive and modus operandi and was therefore admissible under rule 404(2). The State contends also that the testimony tended to show that the defendant's motive for assaulting the victim in the present case was to reenact his previous crime as part of his therapy to get over what he had done in California 21 years ago. In support of this theory, the State refers to testimony of the defendant's second wife, Jody Voils, who stated that the defendant felt it

was necessary to reenact sexual acts from his past in order to get over the trauma associated with them.

The principal issue in this case is whether the defendant had consensual intercourse with the victim. There was no issue as to the identity of the victim.

Even though the California victim's testimony may have had some relevance, under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1989), relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In the context of rule 403, " ' "unfair prejudice" means an undue tendency to suggest a decision on an improper basis.' " *State v. Reynolds*, 240 Neb. 623, 626, 483 N.W.2d 155, 158 (1992). Given the facts and issues involved in this case, including the remoteness of the assault in California, we believe that the evidence of the defendant's previous conviction for a similar offense had an undue tendency to influence the jury's verdict on an improper basis. This error requires that the judgment be reversed and the cause remanded for a new trial.

The defendant's motion for a mistrial was made during cross-examination of the defendant about his previous conviction for the California assault. The defendant was asked, "Isn't it a fact that you were diagnosed as having sexually deviant behaviors?" Since we have determined that the evidence concerning the California assault should not have been admitted, it is unnecessary to determine this assignment of error.

At the trial, Gerald Krieger, an investigator for the Nebraska State Patrol, was allowed to testify over objection that he was trained in interrogation techniques which allowed him to detect deception through verbal and nonverbal communications during an interview. Krieger also testified that he had experience in the administration of polygraph examinations. The defendant's objection to this line of questioning regarding Krieger's knowledge of various interrogation techniques was overruled.

Krieger went on to testify that when he interviewed the

defendant, he was within 3 feet of him, similar to one of the interrogation techniques Krieger had described. He stated that during the interview, the defendant showed changes in his demeanor when discussing a gun, physical abuse on the night in question, and the issue of consent.

Krieger also testified that he looked for lack of eye contact and for lint picking, crossed-arm posture, evasion, and jumping to a different topic. Krieger testified that his experience, as well as what he had learned through his interrogation training, had shown that those behaviors tended to occur when a person was giving deceptive answers.

Krieger went on to testify that he had noted changes in the defendant's demeanor during the course of their interview when the defendant was asked about a weapon, whether there was blood in his vehicle, and whether the victim resisted his advances.

> The admission of expert testimony is ordinarily within the discretion of the trial court, and its ruling will be upheld in the absence of an abuse of discretion. *State v. Jones*, 213 Neb. 1, 328 N.W.2d 166 (1982). Neb. Rev. Stat. § 27-702 (Reissue 1985) provides that "[if] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

*State v. Borchardt*, 224 Neb. 47, 58, 395 N.W.2d 551, 559 (1986).

One problem here is that the evidence is not sufficient to show that Krieger had sufficient expertise to offer an opinion that would assist the jury to understand the evidence or determine a fact in issue.

In *State v. Borchardt*, this court held that the trial court erred in permitting a Nebraska State Patrol officer to testify as to the administration and interpretation of the horizontal nystagmus test because the record contained no competent evidence that the test in fact revealed the presence of intoxication. We stated, "Evidence of a test result cannot be characterized as 'scientific' or qualify as 'technical or other specialized knowledge,' and

thus within the purview of § 27-702, unless and until it is established that the . . . test result demonstrates what it is claimed to demonstrate." 224 Neb. at 58, 395 N.W.2d at 559.

In the present case, the evidence is not adequate to establish that Krieger's interrogation techniques may be used to prove that a person is lying when he or she exhibits a certain demeanor or certain mannerisms while being questioned. Accordingly, the trial court erred in permitting Krieger to testify as to the administration of his various interrogation techniques.

Although Krieger was never asked whether he thought the defendant was lying, the impression given to the jury was that Krieger believed the defendant was lying during the interview because Krieger had observed signs of deception in the defendant's demeanor similar to those he had previously described regarding his interrogation training.

Because the defendant's credibility was central to the issue of consent in this case, it cannot be said that the error in admitting Krieger's testimony concerning interrogation techniques was harmless.

By a pretrial motion, and again by an offer of proof made during the cross-examination of the victim, the defendant requested permission to present evidence concerning the victim's prior sexual assaults and abuse. The trial court overruled the motion and sustained the objection by the State to the offer of proof on the basis of the Nebraska rape shield law, Neb. Rev. Stat. § 28-321(2) (Reissue 1989).

The evidence which the defendant wanted to introduce consisted of statements made by the victim to the examining physician at the hospital that she had been molested for 4 years by her brother, that she had been sexually assaulted four times in high school, and that her 5-year-old child was the product of a sexual assault. None of this evidence appears to have any relevance and was not admissible under the rape shield law.

The defendant contends that because the trial court refused his request to admit evidence concerning the alleged prior sexual assault accusations made by the victim, he was denied the opportunity to confront and to present evidence which would have showed that the victim has a propensity for making false claims of sexual assault.

In the present case, the defendant made no showing at any time that any claim the victim had made concerning prior sexual assaults and familial sexual abuse was false. Accordingly, there was no error.

The defendant claims the trial court erred in instructing the jury that it could convict on the basis of the victim's inability to resist or to appraise the nature of her conduct, because there was no evidence from which the jury could find that the victim was unable to resist or to appraise the nature of her conduct.

There was evidence that at the time of the assault the victim was both intoxicated and ill. The record shows that the victim had consumed 18 to 20 beers prior to encountering the defendant in front of the Blue Mill tavern. Approximately 9 hours after the victim had had her last drink, her blood alcohol content was .116 of 1 gram by weight of alcohol per 100 milliliters of blood. Dr. Van Richards estimated that at the time of the alleged offense, the victim's blood alcohol level would have been approximately .236.

That evidence related to the victim's ability to resist and appraise the nature of her conduct, and it was not error for the trial court to instruct the jury on that issue.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.