STATE OF NEBRASKA, APPELLEE, V. JOE F. DOREMUS, APPELLANT.
514 N.W.2d 649

Filed March 29, 1994.   No. A-93-562.

Dennis R. Keefe, Lancaster County Public Defender, and Margene M. Timm for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

SIEVERS, Chief Judge, and IRWIN and MILLER-LERMAN, Judges.

IRWIN, Judge.

## INTRODUCTION

Joe F. Doremus was convicted of third degree sexual assault in the Lancaster County Court. The district court for Lancaster County affirmed his conviction and sentence, and Doremus has timely appealed to this court. Because the State's expert witness testified on the issue of the victim's mental capacity and defendant was denied an opportunity to have his own expert examine the victim on this issue, we reverse, and remand for a new trial.

## FACTS

The record discloses that in 1992, both defendant and the alleged victim were clients of the Lancaster Office of Mental Retardation (LOMR). The record reveals that at the time of trial, defendant was 44 years old and was mildly mentally retarded, and the victim was 34 years old and was moderately mentally retarded. On May 28, 1992, defendant and the victim were working at the Nebraska Book Company, a LOMR worksite. According to Sharon Hayter, a Nebraska Book employee, defendant and the victim were seated next to each other in the lunchroom when defendant "walk[ed]" his fingers up the victim's leg and then "massag[ed]" the clothed area on top of the victim's penis. Hayter stated that the victim did not physically resist defendant. Hayter reported the incident to a LOMR supervisor, and the Lincoln Police Department was later notified of the incident. Defendant was charged with third degree sexual assault, a Class I misdemeanor, in the Lancaster County Court. See Neb. Rev. Stat. § 28-320(3) (Reissue 1989).

Defendant filed a pretrial motion for an independent psychological or psychiatric evaluation of the victim, which the court denied. At trial, the State called Dr. James Carmer, a psychologist, to testify. Prior to and during Dr. Carmer's testimony, defendant renewed his motion for an independent evaluation. Dr. Carmer had treated the victim as a patient and had also performed a psychological evaluation on him at the

prosecutor's request. Dr. Carmer stated as his opinion that the victim could not understand the concept of sexuality and would not be able to understand what a sexual assault was. Dr. Carmer testified that his opinion was based in part upon the examination he performed at the prosecutor's request.

Prior to trial, defendant also filed a "Motion for Disclosure of Intention to Use Evidence of Other Crimes, Wrongs or Acts." At a hearing on the motion, the State disclosed its intention to use evidence of an alleged similar act that occurred on April 12, 1992, involving defendant and another mentally retarded individual. See Neb. Rev. Stat. § 27-404(2) (Reissue 1989). Defendant's counsel made an oral motion in limine regarding this evidence, which the court overruled. At trial, the State called DeOwn Roth to testify about the April 12 incident. Defendant objected to the court's allowing Roth to testify, and the court overruled the objection. Roth testified that he was a LOMR human service instructor at a group home at which defendant and the other victim stayed. Roth testified that on April 12, he heard the other victim yelling. Roth investigated and found the other victim in the bathroom seated on the toilet with his pants down. Roth testified that defendant was kneeling 2 to $2^1/_2$ feet away from the other victim, with his pants down. Roth also stated that defendant's penis was erect. Apparently, this incident was not reported to the police, and defendant was not charged with any wrongdoing regarding this incident.

The jury found defendant guilty, and the court sentenced defendant to 45 days in jail. Defendant appealed to the district court for Lancaster County, which affirmed the conviction and sentence. Defendant thereafter timely appealed to this court.

## ASSIGNMENTS OF ERROR

Defendant has assigned four errors on this appeal. He contends that the district court erred in affirming the county court's judgment with regard to its denial of defendant's motion for an independent evaluation of the victim and in allowing the State to present evidence on the April 12 incident involving the other mentally retarded victim. In addition, defendant claims that the district court erred in finding that there was sufficient evidence to support the verdict and in finding that the county

court did not abuse its discretion in denying defendant probation.

## DISCUSSION
*Defendant's Motion for Independent Evaluation.*

Defendant claims that the trial court erred in denying his motion for an independent evaluation of the victim and in allowing the State to present expert testimony regarding the victim's ability to resist or appraise the nature of defendant's conduct. Defendant asserts that an independent evaluation was essential to his preparation of an adequate defense, because without an independent evaluation he was unable to rebut the testimony of the State's expert on the issue of the victim's ability to consent or resist.

The determination of whether to grant a defendant's request for a psychiatric evaluation of the victim is a matter of discretion for the trial court and will not be overturned absent an abuse of discretion. *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994); *State v. Welch*, 241 Neb. 699, 490 N.W.2d 216 (1992); *State v. Nelson*, 235 Neb. 15, 453 N.W.2d 454 (1990). The trial court may order a psychiatric examination of the victim only when the record establishes compelling reasons. *Huebner, supra*; *Welch, supra*; *Nelson, supra*. With regard to defense requests for psychiatric examinations, the Supreme Court has stated: " 'The purpose of a psychiatric examination in a case involving a sex offense is to detect any mental or moral delusions or tendencies causing distortion of the imagination which would affect the probable credibility of the complaining witness.' " *Huebner*, 245 Neb. at 346, 513 N.W.2d at 290. Accord, *Welch, supra*; *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992); *Nelson, supra*.

Unlike in the above-cited cases, the purpose of the proposed psychiatric or psychological examination in this case was *not* to determine the victim-witness' credibility. Rather, the purpose of the proposed examination in the present case was to rebut the State's expert testimony that the victim was incapable of understanding the concept of sexuality, i.e., whether he was mentally capable of appraising the nature of defendant's conduct. See § 28-320(1)(b). Therefore, we must determine whether this purpose establishes a compelling need on behalf of

defendant and, if so, whether the trial court abused its discretion in denying defendant's requests for an independent examination.

Other jurisdictions have addressed this issue in cases analogous to the one we presently face. In *State v. Rhone*, 566 So. 2d 1367 (Fla. App. 1990), the defendant was charged with sexual battery. The state sought to introduce expert testimony that the victim suffered from "Battered Spouse Syndrome," which rendered the victim incapable of consenting to sexual intercourse. The defendant moved for an independent psychological evaluation of the victim. In a pretrial order, the trial court ordered both sides to submit lists of psychologists, from which the court was to select an independent examining expert. The state petitioned for writ of certiorari, and the Florida District Court of Appeal denied the state's petition, stating:

> "[W]hile we do not expressly reject the concept of the court possessing inherent power to require such an examination under the most compelling of circumstances where it is necessary to insure a just and orderly disposition of the cause, we would discourage the practice in any but the most extreme instances." . . .
>
> . . . [T]he defendant must demonstrate extreme and compelling circumstances so that a defendant would be denied his right of due process if a physical examination were not allowed.
>
> The trial court concluded that this case is one where the defendant has met his heavy burden, and we cannot find that he departed from the essential requirements of law. The purpose of the examination in this case is to discover and evaluate evidence of an essential element of the crime itself, namely whether the victim gave her consent. In the hearing below the State maintained that it needed the psychological expert's testimony to prove this element in its case. . . . [S]uch opinion evidence can only be rebutted by having another examiner interview the victim.

*Id.* at 1368-69.

In *People v. Wheeler*, 151 Ill. 2d 298, 602 N.E.2d 826 (1992), the Illinois Supreme Court found error when a trial court

denied a defendant's request for an independent evaluation of a sexual assault victim where the state introduced expert testimony that the victim suffered from rape trauma syndrome. The court noted that because the state's expert testimony was used as substantive evidence that the sexual assault occurred, the defendant had a compelling reason to have his own expert examine the victim.

In *Wheeler*, the state argued that the defendant was not prejudiced because he could have rebutted testimony of the state's psychotherapist by calling an expert to examine the reports and testimony of the psychotherapist. The court responded, stating:

> This argument ignores the inherent qualitative differences between testimony from an examining expert and a nonexamining expert.
>
> . . . An expert who has personally examined a victim is in a better position to render an opinion than is an expert who has not done so. . . .
>
> . . . .
>
> . . . Psychological testimony is often disputed and the value of an expert's opinion depends in large part upon the basis for that opinion. . . . Because the State in this case had the exclusive right to examine [the victim], the credibility of its expert was elevated above that of any nonexamining expert defendant could call. Thus, we find it is fundamentally unfair that the State was able to present the testimony of an examining expert but the defendant was limited to the testimony of a nonexamining expert.

(Citations omitted.) *Id.* at 309-11, 602 N.E.2d at 832-33. Accord, *State v. Maday*, 179 Wis. 2d 346, 507 N.W.2d 365 (Wis. App. 1993); *Rhone, supra.*

In the present case, defendant filed a pretrial motion for an independent psychological or psychiatric evaluation of the victim. In his motion, defendant noted that the State intended to call expert witnesses to testify regarding the victim's capacity to resist or consent to sexual contact. Defendant claimed that due process required that the court give him an opportunity to present expert evidence regarding the victim's ability to resist or consent and that this could only be accomplished by conducting

an independent psychological or psychiatric evaluation. In response to the motion, the prosecutor informed the court that the State had not requested an examination of the victim, but that the State merely intended to call a psychiatrist and possibly a psychologist who had previously treated him. The court overruled defendant's motion. *After* the court's ruling on this motion, at the prosecutor's request, Dr. Carmer performed a specific psychological evaluation of the victim. Immediately prior to Dr. Carmer's testimony at trial, defendant's counsel objected and renewed defendant's motion for an independent evaluation, stating:

> It's my understanding that Dr. James Carmer will be testifying as to results of a [sic] evaluation and tests that he performed on [the victim] and we're essentially renewing our motion to allow the defense to have independent evaluation of [the victim] and if that's denied then we do object to allowing the State to have their witness testify as to those issues.

The court denied defendant's renewed motion and overruled his objection. Over defendant's objections, Dr. Carmer testified about matters which were at least partially based on the results of the testing he performed on the victim at the request of the prosecutor. The following exchange also occurred on direct examination:

> Q . . . Based upon your education, training and experience, based upon your interviews of [the victim], *based upon the testing* of [the victim], and the history of [the victim], do you have an opinion as to whether [the victim] would be able to understand the — what a sexual assault was?
>
> THE COURT: At this point that's a yes or no question, sir.
>
> . . . .
> A Yes, I do.
>
> Q And what would your opinion be?
>
> [Counsel for defendant]: Objection, Your Honor, based on previously stated reasons . . . .
>
> THE COURT: Objection's overruled. You may answer, sir.

A [The victim], I believe, would understand that he — he doesn't — he wouldn't like what would amount to a sexual assault, and would be irritated and feel attacked. But I do not believe that he would understand it as being sexual in nature.

(Emphasis supplied.)

The record reveals that one of defendant's "previously stated reasons" for his objection was the court's overruling of his motion for an independent evaluation. In essence, defendant was renewing his motion for an independent evaluation after the court was aware that Dr. Carmer was testifying as to the issue of the victim's capacity to understand the nature of defendant's conduct. The court's overruling of defendant's objection thus was equivalent to denying his motion for an independent evaluation. There were at least five opinion questions asked of Dr. Carmer to which the defense made the same objection as that made above. Each time, the result was the same.

To summarize, in the present case the State introduced testimony from its own examining expert that the victim was mentally incapable of understanding a sexual assault. Part of the charge that defendant faced in this case was that he subjected the victim to sexual contact when defendant knew or should have known that the victim was mentally incapable of appraising the nature of defendant's conduct. See § 28-320(1)(b). Dr. Carmer's testimony established an essential element of the crime. We agree with the Florida District Court of Appeal's holding in *State v. Rhone*, 566 So. 2d 1367 (Fla. App. 1990), where, as here, the exam sought would lead to testimony about an essential element and thus presents a compelling circumstance that justifies a court-ordered psychiatric evaluation of the victim by the defendant's expert. As the Illinois Supreme Court stated in *People v. Wheeler*, 151 Ill. 2d 298, 602 N.E.2d 826 (1992), any testimony that defendant could have presented by a nonexamining expert could not rise to the level of credibility of that of the State's examining expert. Defendant was thus deprived of a level playing field.

■ "A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or to refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system." *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 858, 510 N.W.2d 41, 50-51 (1994). Accord *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993). The trial court's denial of defendant's motion prevented defendant from obtaining necessary evidence to effectively rebut the State's expert testimony, which was used to establish an essential element of the crime. We find that defendant was deprived of a substantial right, and we conclude that the trial court abused its discretion in overruling defendant's motion for an independent evaluation.

In reaching our decision, we remain aware of the victim's privacy interests and the potential for added trauma resulting from another psychological or psychiatric examination. In *State v. Nelson*, 235 Neb. 15, 21, 453 N.W.2d 454, 458 (1990), the Supreme Court also expressed concern for victims of alleged sexual crimes, stating:

> "In actions involving sex crimes, the complainant is not the person being tried. The proceedings should not put the complaining witness on trial to shift the attention away from the accused. Neither should the trial be conducted to unnecessarily subject the complaining witness to additional trauma. However, we must also recognize the right of one accused of a sex offense to have a fair trial. We believe these competing principles require that we follow what appears to be the majority rule that the trial court has discretion to order a psychiatric examination of a complaining witness based upon compelling reasons established on the record, but not for a mere fishing expedition."

(Quoting *State v. Buckley*, 325 N.W.2d 169 (N.D. 1982).) When a defendant's request for a mental examination is merely a "shot in the dark," i.e., defendant is merely on a "fishing expedition," or even worse, requests such exam only to inhibit the victim from pursuing prosecution, such an exam should not be ordered.

*Prior Bad Acts Evidence.*

■ Although we have determined that defendant's first assigned error alone requires reversal, we will address the prior bad acts issue, as it will likely arise in connection with defendant's new trial. Defendant claims that the trial court erred in admitting the testimony of DeOwn Roth regarding the April 12 incident involving defendant and another mentally retarded and physically disabled male. Section 27-404(2) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The above-quoted provision is a rule of inclusion, not exclusion, and the list of acceptable uses for prior bad acts recited in § 27-404(2) is illustrative and not intended to be exclusive. *State v. Stephens*, 237 Neb. 551, 466 N.W.2d 781 (1991); *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990). When reviewing the admission of evidence of other acts under § 27-404(2), an appellate court considers (1) whether the evidence was relevant; (2) whether the evidence had a proper purpose; (3) whether the probative value of the evidence outweighed its potential for unfair prejudice; and (4) whether the trial court, if requested, instructed the jury to consider the evidence for the purpose for which it was admitted only. *Stephens, supra*.

■ The court in *Stephens* stated that sexual crimes are offenses in which evidence of similar sexual conduct by the defendant has independent relevancy and that such evidence may be admissible whether the conduct involved the complaining witness or other parties. Accord, *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985); *State v. Keithley*, 218 Neb. 707, 358 N.W.2d 761 (1984). The April 12 incident is similar and proximate in time to the sexual assault that defendant was charged with, as both incidents involved male victims who were moderately or severely mentally retarded.

■ In *Stephens*, the Supreme Court found that evidence of a prior bad act had independent relevance where it tended to show an absence of mistake or accident. In the present case, when questioning Sharon Hayter, the witness who had observed the May 28 incident, defendant's counsel attempted to leave the impression that the alleged sexual assault on the victim was merely an act of tickling:

> Q Now you demonstrated with your fingers what you observed. Could that be described as a tickling-type motion?
>
> A I don't know. Depends on how you look at it I guess.
>
> Q Is it possible somebody would see that as a tickling motion?
>
> A Depends where their hand is.

The evidence of the April 12 incident has independent relevance because it tends to show absence of mistake or accident.

■ With regard to the requirement that the evidence have a proper purpose, the court in *Stephens* held that a proper purpose is also shown where the evidence tends to show an absence of mistake or accident. Evidence of the April 12 incident thus had a proper purpose.

■ The third inquiry regarding the admissibility of this evidence is whether its probative value outweighs the potential for unfair prejudice. "Balancing the probative value of evidence against the danger of unfair prejudice is within the discretion of the trial court." *Stephens*, 237 Neb. at 557, 466 N.W.2d at 786. Under this standard, defendant must establish unfair prejudice. Defendant argues in his brief that the probative value of evidence regarding the prior act is outweighed by its prejudicial value because defendant was not criminally charged in connection with that incident. The fact that a defendant was not criminally charged in connection with the prior act appears to bear little relevance, as the court in both *Stephens* and *Yager* found that evidence of the defendants' uncharged prior sexual conduct was admissible. We find that the probative value of the evidence in this case was not outweighed by the potential for unfair prejudice.

The final factor we are to consider is whether the trial court, if requested, instructed the jury to consider the evidence for the

purpose for which it was admitted only. The record reveals that the trial judge offered to instruct the jury to consider the evidence of the prior act for a limited purpose, but that defendant did not want such an instruction.

Having considered all of the factors listed above, we conclude that the trial court committed no error in admitting evidence regarding the April 12 incident.

## REMAINING ASSIGNED ERRORS

Since we have concluded that a new trial must take place, we do not comment on the assigned errors alleging that there was insufficient evidence to base a conviction on and that the sentence imposed was inappropriate.

## CONCLUSION

We reverse the district court's judgment affirming defendant's conviction and sentence and remand the cause to that court with directions to remand to the county court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.