El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
En esta ocasión nos corresponde resolver si una persona acusada de cometer actos lascivos contra una menor de edad puede solicitar que un psicólogo de la defensa examine a la presunta víctima para determinar si presenta los rasgos típicos de una niña abusada sexualmente. Luego de analizar detenidamente las normas relativas a esta controversia, concluimos que solamente procede autorizar un examen de ese tipo si es necesario para refutar una opinión diagnóstica de abuso sexual ofrecida por un perito del Ministerio Público. Como del recurso ante nuestra consideración no se deduce claramente que el Estado tenga la intención de presentar prueba de tal naturaleza, confirmamos el dictamen recurrido.
I
El Ministerio Público denunció al Sr. José Olmeda Zayas por presuntamente haber abusado sexualmente de una niña de once años de edad, en violación del Art. 144 del Código Penal de Puerto Rico, 33 L.P.R.A. see. 4772, que tipifica el delito grave de actos lascivos. Como resultado de ello, también se presentaron cargos por maltrato contra la madre de la menor.
*12 Luego de determinarse causa probable para arresto y fijarse la fianza de rigor, el Estado solicitó la autorización para ofrecer el testimonio de la niña en la vista preliminar a través del sistema televisivo de circuito cerrado. Por su parte, Olmeda Zayas se opuso a dicha petición por entender que no había razón alguna para recurrir a ese mecanismo. A su vez, exigió una copia del informe pericial preparado para justificar su uso y una copia del currículo de la persona responsable de su elaboración.
Posteriormente, el foro de instancia celebró una vista de necesidad en conformidad con la Regla 131.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En ésta declaró como perito del Ministerio Público la Dra. Berta Marchand, psicóloga clínica licenciada por el Estado Libre Asociado de Puerto Rico. Según el resumen de su testimonio que Olmeda Zayas incluyó en el presente recurso, la doctora Marchand opinó que someter a la niña a un careo directo con el acusado podría traumatizarla. Sin embargo, durante el contrainterrogatorio aceptó que la menor era vulnerable, manipulable por los adultos y dada a contestar sus preguntas con el ánimo de complacerlos. Por último, admitió haber sido contratada para preparar un informe que “validaría” las alegaciones de abuso sexual formuladas por la menor, de acuerdo con su opinión diagnóstica como psicóloga.
Examinados los argumentos de ambas partes, así como el testimonio reseñado, el foro de instancia concedió la solicitud del Ministerio Público. En consecuencia, la declaración de la menor en la vista preliminar se ofreció mediante el sistema de circuito cerrado y, a raíz de su testimonio, se encontró causa probable para acusar a Olmeda Zayas. No obstante, debido a que el Estado también solicitó que el testimonio de la menor se ofreciera en el juicio mediante el referido sistema, el tribunal tuvo que celebrar otra vista de necesidad.
En esta segunda vista, Olmeda Zayas cuestionó a la doctora Marchand sobre el informe de “validación de hechos” *13 que supuestamente le habían encomendado. Sin embargo, la doctora Marchand expresó que no había preparado tal informe y, esencialmente, reiteró la opinión pericial que había ofrecido anteriormente. En vista de ello, Olmeda Zayas solicitó una evaluación psicológica de la presunta víctima, como parte del descubrimiento de prueba previo al juicio, para determinar si presentaba las características de una niña abusada sexualmente. En síntesis, su solicitud se basó tanto en las declaraciones de la doctora Marchand como en las notas de los agentes investigadores, que contienen alegaciones de la menor sobre tres casos anteriores de abuso sexual presuntamente cometido por tres personas distintas.
Oportunamente, el foro de instancia concedió la petición del Ministerio Público para utilizar en el juicio el sistema televisivo de circuito cerrado. No obstante, denegó la solicitud de examen psicológico antes reseñada y se negó a ordenarle al Estado que entregara la copia de los resultados de una prueba para detectar restos biológicos que se realizó en el interior del automóvil de Olmeda Zayas.
Inconforme, Olmeda Zayas recurrió ante el Tribunal de Apelaciones, mas dicho foro denegó el recurso presentado. En esencia, el tribunal consideró que la necesidad de evaluar psicológicamente a la menor a través de un perito de la defensa no era mayor que el peijuicio que ello le podría causar. Por otra parte, concluyó que como en el juicio Olmeda Zayas tendría la oportunidad de ver e impugnar los resultados de la prueba científica antes mencionada, no procedía que el Ministerio Público los entregara como parte del descubrimiento de prueba.
Aún insatisfecho, Olmeda Zayas comparece ante nos y solicita que revoquemos el dictamen emitido por el Tribunal de Apelaciones. Argumenta, en síntesis, que para contrainterrogar efectivamente tanto a la menor como a los peritos del Estado es necesario contar con una evaluación psicológica de ésta, realizada por un perito de la defensa. *14 Aduce que procede autorizar ese examen como corolario de su derecho al debido proceso de ley. Por último, señala que la propia Regla 95(a)(3) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, le reconoce la facultad de examinar los resultados de toda prueba científica, o exámenes físicos o mentales, que estén en posesión del Ministerio Público y que sean relevantes para preparar adecuadamente su defensa.
Visto el recurso, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.
II
La Constitución del Estado Libre Asociado de Puerto Rico ha reconocido como principio fundamental del proceso penal el derecho de todo acusado a informarse debidamente en la preparación de su defensa. Aunque esta protección dimana esencialmente del derecho al debido proceso de ley, en determinadas circunstancias también se fundamenta en el derecho a confrontarse con los testigos de cargo. Art. II, Secs. 7 y 11, Const. E.L.A., L.P.R.A., Tomo 1. Así sucede, por ejemplo, cuando el Ministerio Público cuenta con medios de prueba que podrían servir para impugnar la credibilidad de sus testigos o que fomentarían el descubrimiento de la verdad. Véanse: Pueblo v. Velázquez Colón, 174 D.P.R. 304, 326-348 (2008); Pueblo v. Rodríguez Sánchez, 109 D.P.R. 243, 246-249 (1979); Hoyos Gómez v. Tribunal Superior, 90 D.P.R. 201, 204 (1964).
Ahora bien, como ocurre con tantos otros derechos constitucionales, esta garantía no establece un imperativo absoluto. En efecto, hemos resuelto que el derecho de un acusado a descubrir la prueba en poder del Ministerio Público surge, por lo general, de la Regla 95 de Procedimiento Criminal, supra. En este sentido, el descubrimiento de prueba que rebasa el texto de dicha regla y busca apoyo en *15 el debido proceso de ley no es un recurso que deba invocarse livianamente. Al aprobarse nuestra Constitución, no se pretendió conceder a los acusados el derecho ilimitado de revisar los archivos del Ministerio Público ni el de exigir la entrega de todo material que pueda estar relacionado con el caso penal entablado en su contra. Pueblo v. Rodríguez Sánchez, supra.
Aunque se trate de una garantía de origen estatutario, la referida Regla 95 de Procedimiento Criminal provee una amplia protección en esta zona. En particular, establece que en cualquier momento después de presentarse el pliego acusatorio, y dentro del término prescrito para ello, un acusado puede presentar una moción para que el Ministerio Público le proporcione cierta información que esté bajo su control. Entre la variedad de documentos enumerados en la regla están las declaraciones juradas que el Estado tenga del acusado y de los testigos de cargo, así como el registro de los delitos por los que se les haya condenado previamente. 34 L.P.R.A. Ap. II, R. 95(a).
Como se puede apreciar, el derecho al descubrimiento de prueba bajo esta regla normalmente se limita al examen de los documentos que estén en poder del Estado. Sin embargo, hay ciertas circunstancias en las que un acusado puede tener derecho a solicitar la prueba en poder de personas ajenas al proceso penal e, incluso, la información que esté bajo el control de la propia víctima. Así, pues, si el material solicitado no se encuentra bajo la custodia del Fiscal, dicho funcionario debe informarlo al tribunal para que se ordene su producción. Véanse: Regla 95(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II; Pueblo v. Rodríguez Sánchez, supra; Pueblo v. Colón Rivera, 93 D.P.R. 852 (1967); E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1993, Vol. Ill, See. 28.2, págs. 321-323.
En lo pertinente al caso de autos, la Regla 95 de *16 Procedimiento Criminal, supra, reconoce al acusado el derecho de obtener una copia de cualquier informe sobre exámenes físicos o mentales, experimentos o pruebas científicas que sean relevantes para preparar adecuadamente su defensa. Evidentemente, ello incluye los informes que el Estado se proponga utilizar en el juicio. No obstante, entre lo que la regla reconoce como objeto de descubrimiento no figura el derecho de examinar a determinada persona —incluso la víctima— mediante pruebas científicas, físicas o psicológicas. Véase 34 L.P.R.A. Ap. II, R. 95(a)(3).
Más bien, en estos casos, la posibilidad de someter a la presunta víctima a una evaluación mental —el único asunto que está ante nuestra consideración— tiene su base en nuestra jurisprudencia. Por ende, para resolver la controversia medular del presente caso, debemos examinar primeramente la normativa que hemos elaborado sobre el particular a través de los años.
A. Como es sabido, en nuestros tribunales se ad-mite la prueba pericial sobre el llamado “síndrome del niño abusado sexualmente”. A tales efectos, en Pueblo v. Canino Ortiz, 134 D.P.R. 796 (1993), resolvimos que tanto las Reglas 52 y 57 de Evidencia, 32 L.P.R.A. Ap. IV, como los estudios más recientes sobre el particular, servían de base para admitir este tipo de testimonio en los casos penales de abuso sexual infantil. Aun cuando puede referirse a diversos aspectos, de ordinario, esta prueba consiste en el testimonio ofrecido por un perito debidamente cualificado sobre las características que exhibe normalmente un niño que ha sido víctima de abuso sexual; a saber: miedo, confusión, vergüenza, pesadillas, incontinencia, retraimiento o aprovechamiento escolar bajo. Id., págs. 803-806.
El testimonio sobre dicho síndrome es de incalculable ayuda para el juzgador de los hechos, ya que generalmente estos casos ocurren entre adultos y niños de corta edad. Como es natural, ello dificulta el procesamiento de las personas que cometen este tipo de delitos, pues muchas veces *17 los menores no pueden declarar de forma articulada sobre el alegado abuso. En este sentido, la prueba pericial cumple con el propósito de ayudar al foro judicial a emitir un juicio sobre la culpabilidad del acusado. De hecho, sujeto a ciertos límites, se admite hasta la opinión sobre el asunto medular en controversia o la “cuestión última” a resolver, hecha la salvedad de que siempre se puede rechazar dicha opinión si no merece crédito alguno. Pueblo v. Canino Ortiz, supra, págs. 804-805.
Sobre el particular, en Pueblo v. Canino Ortiz, supra, págs. 805-806, concluimos que los tribunales no pueden permitir que el perito opine directamente sobre la veracidad de la versión del menor ni sobre lo confiable de su testimonio. De esta manera, reconocimos que en estos casos el testimonio pericial tiene el efecto inevitable de corroborar la declaración de la presunta víctima dándole, en gran medida, visos de credibilidad. Por consiguiente, para mitigar el perjuicio que ello podría causar, decidimos limitar su alcance. En esencia, el perito solamente puede opinar sobre: (1) las características generales que muestran los niños abusados sexualmente (opinión clásica sobre el síndrome); (2) si la presunta víctima, en el caso particular, las exhibe (opinión concreta sobre la existencia de circunstancias indicativas del síndrome), y (3) si, a su juicio, la presunta víctima ha sido abusada (opinión o conclusión diagnóstica de abuso sexual).
De ordinario, el Estado presenta el testimonio aludido para reforzar sus alegaciones de abuso sexual contra el acusado. De esta forma, se pretende establecer que posibles rasgos de conducta de la presunta víctima, o el comportamiento mismo que ésta exhibe durante su declaración en el juicio, son similares a los de un menor abusado sexualmente. Por otra parte, en la generalidad de los casos, la persona que ofrece testimonio como perito del Ministerio Público ha podido examinar personalmente al me-nor; casi siempre, en múltiples ocasiones. Véanse, e.g.\ *18 Pueblo v. Canino Ortiz, supra, pág. 802 (seis evaluaciones previas); Pueblo v. Ríos Maldonado, 132 D.P.R. 146, 151 (1992) (cuatro evaluaciones previas).
En cambio, la persona que testifica como perito de la defensa normalmente no tiene la oportunidad de evaluar a la presunta víctima. Véase Pueblo v. Canino Ortiz, supra, pág. 803. Precisamente, esta situación ha motivado que se reclame el derecho a examinar al menor para confrontar la prueba pericial del Estado o para presentar prueba de que, en realidad, éste no fue abusado. Véase, en general, C. Gitlin, Expert Testimony on Child Sexual Abuse Accommodation Syndrome, 26 Quinnipiac L. Rev. 497 (2008).
Ya hemos analizado esa diferencia entre el testimonio pericial que puede ofrecer el Ministerio Público y el que pueden ofrecer los acusados. En Pueblo v. Arocho Soto, 137 D.P.R. 762 (1994), se invocó la norma pautada en Canino Ortiz para presentar prueba sobre el síndrome antes reseñado a favor de la defensa. A esos efectos, sin exponer circunstancia alguna que lo ameritara, el acusado solicitó una autorización para someter a la presunta víctima a una evaluación psicológica que le realizaría un perito de su selección. El foro de instancia concedió dicha petición, pero procuró mitigar mediante unas órdenes protectoras cualquier perjuicio que la evaluación pudiera tener sobre el bienestar de la menor.
Presentado el asunto ante nuestra consideración, resolvimos que, previo a solicitar una autorización como esa, un acusado debe demostrar que su necesidad de obtener un examen psicológico de la presunta víctima es mayor que el perjuicio que ello le podría causar. Así, pues, establecimos lo que desde entonces se ha conocido como el estándar de clara necesidad, el cual está basado en un balance entre el interés de intimidad de la presunta víctima y el interés de libertad del acusado. Como en Pueblo v. Arocho Soto, supra, no se satisfizo tal criterio, revocamos la *19 orden del tribunal de instancia y negamos al acusado el derecho de realizar la referida evaluación. íd., págs. 766-768.
Posteriormente, en Pueblo v. Ríos Alonso, 156 D.P.R. 428 (2002), resolvimos que el estándar de clara necesidad no aplica si la condición mental de la presunta víctima es un elemento esencial del delito. Nuestra determinación en ese sentido se basó en el hecho de que el Ministerio Público alegó en la acusación que la presunta víctima había sufrido un patrón de maltrato físico y psicológico, y para probar lo anterior, ofrecería el testimonio de dos psicólogos que anteriormente la habían examinado. Al enterarse de esto, el acusado solicitó una orden para que su perito evaluara a la supuesta perjudicada con el fin de confrontar, en igualdad de condiciones, la prueba de cargo. Tanto el foro de instancia como el entonces Tribunal de Circuito de Apelaciones dieron la razón al acusado y autorizaron la evaluación solicitada.
Oportunamente, el Estado recurrió ante nos, y, tras analizar detenidamente el tratamiento que los tribunales estadounidenses le habían dado a la controversia, resolvimos que los foros recurridos no habían abusado de su discreción al autorizar el referido examen psicológico. Al respecto, consideramos que la solicitud aludida estaba fundamentada en bases concretas (la relación de uno de los elementos del delito imputado con el estado mental de la alegada víctima) y que, por lo tanto, no se trataba de un mero intento de minar la credibilidad de la supuesta perjudicada mediante el testimonio sobre su inestabilidad emocional. En este sentido, concluimos que negarle al acusado la posibilidad de procurar dicha evaluación lo colocaría en una marcada desventaja, pues limitaría su capacidad de confrontar la prueba de cargo. En esas circunstancias, sólo dos alternativas preservarían la integridad del proceso judicial y garantizarían un juicio justo: autorizar el examen solicitado por el acusado o negarle al *20 Ministerio Público la posibilidad de presentar prueba alguna sobre el estado mental de la presunta víctima. Véanse: Pueblo v. Ríos Alonso, supra, págs. 438-447; State v. Doremus, 514 N.W.2d 649, 653—654 (Neb. App. 1994); State v. Rhone, 566 So.2d 1367, 1368-1369 (Fla. App. 1990); State v. Zeh, 509 N.E.2d 414, 418 (Oh. 1987); State v. García, 613 P.2d 725, 728-729 (N.M. App. 1980).
Por otra parte, ante el hecho de que el testimonio pericial se relacionaba con un elemento del delito, en dicha decisión expresamos que darle al Ministerio Público una especie de exclusividad para examinar psicológicamente a la presunta víctima tendría el efecto de elevar desmedidamente el valor probatorio del perito que declararía como su testigo. Sobre el particular, también señalamos que el valor probatorio del perito de la defensa, quien no había podido evaluar a la alegada perjudicada, se vería disminuido frente al de los peritos de cargo que sí podrían ofrecer una impresión diagnóstica sobre su condición mental. Véanse: Pueblo v. Ríos Alonso, supra, págs. 445—446; People v. Wheeler, 602 N.E.2d 826, 832-33 (Ill. 1992). Véase, también, Pueblo v. Canino Ortiz, supra, pág. 803 (que destacó el hecho de que el perito de la defensa nunca examinó a la presunta víctima).
B. El caso ante nuestra consideración, al igual que Pueblo v. Arocho Soto, supra, y Pueblo v. Ríos Alonso, supra, presenta un conflicto entre el derecho del acusado a un juicio justo e imparcial y el derecho de la presunta víctima a la protección de su dignidad e intimidad, asunto de especial consideración cuando se trata de una menor con un mayor potencial de sufrir un trauma emocional. Por lo tanto, debemos realizar un balance entre ambos intereses para solucionar una controversia que, claramente, se origina en la admisión del testimonio pericial sobre el síndrome del niño abusado sexualmente. Como hemos señalado, en este caso el acusado reclama un derecho de examinar psicológicamente a la presunta víctima para de *21 terminar si exhibe las características de una menor que ha sido abusada. Por su parte, el Ministerio Público se ha opuesto a tal solicitud por considerar que la menor ya ha sido examinada por los peritos del Estado y que, por ende, no es necesario someterla a una evaluación adicional.
No hay duda de que la admisión de prueba pericial sobre el referido síndrome entraña varios riesgos para la defensa, sobre todo cuando el Estado la ofrece para demostrar que la presunta víctima fue abusada sexualmente. Diversos estudios realizados por profesionales de la conducta humana han analizado el impacto que el testimonio pericial puede tener sobre la determinación de culpabilidad que se emita en estos casos. Por ejemplo, aun cuando se ha defendido la admisión de esta clase de prueba, también se ha advertido que los peritos pueden experimentar un conflicto entre su rol como profesionales imparciales y su compromiso con la defensa de los niños víctimas de abuso. Por otra parte, incluso el testimonio pericial sobre las características generales de los niños abusados sexualmente (opinión clásica) tiende a reforzar la credibilidad de la versión del menor. Véanse, a modo ilustrativo: M.J. Crowley, M.G. O’Callaghan y P.J. Ball, The Juridical Impact of Psychological Expert Testimony in a Simulated Child Sexual Abuse Trial, 18 Law & Hum. Beh. 89, 91,100 (1994); M.B. Kovera, R.J. Levy, E. Borgida y S.D. Penrod, Expert Testimony in Child Sexual Abuse Cases, 18 Law & Hum. Beh. 653, 667-68 (1994).
Un factor adicional a considerar en estos casos es el impacto del contrainterrogatorio que se le haga al perito del Ministerio Público. Existe el riesgo de que con mayor frecuencia los miembros del Jurado encuentren culpable a un acusado si han escuchado la prueba pericial sobre las circunstancias emocionales de una menor víctima de abuso. Incluso en los casos de testimonio sobre síndromes, un contrainterrogatorio “fuerte” tiene sólo un efecto moderado sobre la credibilidad que el Jurado le brinda al perito de *22 cargo. El efecto de ese contrainterrogatorio es aún menor cuando se trata de un testimonio sobre factores relacionados con la credibilidad de la presunta víctima, como por ejemplo, una opinión diagnóstica de que ésta fue abusada sexualmente o de que presenta los rasgos propios de un niño abusado (es decir, el tipo de opinión admisible en nuestra jurisdicción). Véanse: Kovera et al., supra, págs. 667-671; D.L. Noonan, Where do We Go from Here? A Modem Jurisdictional Analysis of Behavioral Expert Testimony in Child Sexual Abuse Prosecutions, XXXVIII (Núm. 2) Suffolk U. L.Rev. 493 (2005).
En este sentido, puede que no baste con que el perito de la defensa revise el informe pericial y escuche el testimonio del menor o el de los peritos de cargo. Para atacar el testimonio pericial antes reseñado podría ser necesario contar con un perito propio que aporte prueba distinta a la ofrecida por el Ministerio Público. En ciertos casos, ello bien podría requerir que el perito de la defensa evalúe a la presunta víctima. Véanse: People v. Wheeler, supra, pág. 832; Kovera et al., supra, pág. 670. Véase, además, J. Selkin y P.G.W. Schouten, The Child Sexual Abuse Case in the Court Room: A Source Book, Colorado, ed. del autor, 1987, págs. 135-162.
Ahora bien, de lo antes expuesto resalta que el alegado perjuicio que podría sufrir un acusado en estos casos sólo existiría si el Estado ofrece prueba pericial en forma de una opinión diagnóstica bajo el síndrome del niño abusado sexualmente para probar que, en efecto, la presunta víctima fue abusada. Es ello, precisamente, lo que podría dar lugar a concederle la oportunidad de que un perito de la defensa examine psicológicamente a la supuesta perjudicada. De esta manera, tanto los peritos del Ministerio Público como los peritos de la defensa estarían en posición de emitir sendas opiniones producto de una misma base. Por consiguiente, según lo determine finalmente el juez de instancia, estas circunstancias podrían establecer *23 una clara necesidad para la referida evaluación. Cf. Pueblo v. Ríos Alonso, supra.
Por el contrario, ningún perjuicio sufriría un acusado al negársele el derecho de examinar psicológicamente a la presunta víctima si, por ejemplo, el Ministerio Público no pretende poner en controversia su estado mental ni intenta ofrecer prueba pericial en forma de una opinión diagnóstica según el síndrome del niño abusado sexualmente. De hecho, según lo resolvimos en Pueblo v. Canino Ortiz, supra, el testimonio pericial en estos casos no puede versar directamente sobre la credibilidad o la confiabilidad de la versión ofrecida por el menor. Por ende, tampoco procede autorizar un examen psicológico de la presunta víctima para simplemente impugnar su testimonio. Cf. Pueblo v. Arocho Soto, supra. Véase, además, Pena v. Pena, 164 D.P.R. 949, 963 (2005).
En atención a todo lo anterior, consideramos que sólo si el Ministerio Público presenta una opinión diagnóstica dirigida a demostrar que la presunta víctima fue abusada sexualmente, según lo resuelto en Pueblo v. Canino Ortiz, supra, el acusado puede solicitar —mediante la demostración concreta del perjuicio que sufriría con ello— que un perito de la defensa examine psicológicamente al menor para refutar dicho testimonio. Al tomar una determinación en ese sentido, aplicamos los criterios que tradicionalmente rigen el derecho al descubrimiento de prueba en este contexto, como por ejemplo, que una solicitud de esta naturaleza no puede concederse automáticamente. Véase Pueblo v. Arocho Soto, supra. A tales efectos, es preciso recordar que
[e]l descubrimiento de prueba en el proceso criminal debe enancharse hasta donde permita la competencia entre el interés del acusado en su defensa y la confidencialidad de determinados documentos y expedientes, moderada por una discreción judicial que habrá de decidir si la utilidad que para la defensa representa esa prueba supera los intereses del Estado y *24 de terceras personas a cuya protección va dirigida la norma de secretividad. (Enfasis suplido.) Pueblo v. Rodríguez Sánchez, supra, pág. 248.
El estándar de clara necesidad incorpora, pues, el criterio que siempre hemos utilizado para evaluar las solicitudes de un descubrimiento de prueba más amplio que el autorizado por la Regla 95 de Procedimiento Criminal, supra. Bajo tal criterio, el acusado “debe hacer alguna demostración prima facie convincente de la materialidad de esa evidencia y de la legitimación de su petición que la excluyen de la calificación de alegación simplemente dilatoria, onerosa y hostigante”. Pueblo v. Rodríguez Sánchez, supra, pág. 249.
Por consiguiente, el caso Pueblo v. Arocho Soto, supra, no puede interpretarse como una barrera absoluta que impida todo examen psicológico de la presunta víctima. De una simple lectura de dicho caso puede colegirse que la solicitud de evaluación mental presentada allí no aducía hecho alguno que cumpliera con el criterio enunciado en Pueblo v. Rodríguez Sánchez, supra. En Arocho Soto tampoco se presentaron razones que nos permitieran descartar que se trataba de una petición para meramente hostigar a la presunta víctima, impugnar su capacidad como testigo o exponer algún rasgo de inestabilidad emocional que minara su credibilidad. En definitiva, ninguno de esos fines justificaría la evaluación psicológica de un menor. Por eso es, precisamente, que según dispusimos en Arocho Soto los acusados deben demostrar una clara necesidad antes de que se autorice tal examen.
En cambio, cuando el Ministerio Público anuncia prueba pericial en forma de una opinión diagnóstica según el síndrome del niño abusado sexualmente, se podrían sen-tar las bases para que el acusado procure un examen mental de la presunta víctima, que lo realizaría un perito de la defensa. Cf. Pueblo v. Ríos Alonso, supra. Como hemos visto, aunque limitado en cuanto a la opinión directa sobre *25 la veracidad o confiabilidad de la versión de la presunta víctima, como parte de la prueba pericial sobre el referido síndrome en Puerto Rico puede ofrecerse hasta la opinión diagnóstica de que el menor de edad fue abusado sexualmente. Por ende, si el acusado demuestra que una declaración como esa tendría un efecto devastador si se ofrece durante el juicio, y que el contrainterrogatorio al perito del Estado impactaría poco la credibilidad de su testimonio, el foro de instancia podría autorizar que un perito contratado por la defensa examine psicológicamente a la presunta víctima para refutar tal manifestación.
A nuestro juicio, lo anterior no sólo es consecuencia de nuestro deber constitucional de garantizar a los acusados el derecho a un juicio justo e imparcial, sino también de nuestra obligación de preservar la integridad del proceso judicial. En ciertas circunstancias, permitirle sólo al Ministerio Público presentar prueba pericial de que la presunta víctima fue objeto de abuso sexual, a base de una evaluación psicológica de sus propios peritos, podría refrendar un desbalance injusto entre la posibilidad de que ambas partes presenten prueba de esa naturaleza. Véanse: Pueblo v. Suárez, 163 D.P.R. 460 (2004); Pueblo v. De León Martínez, 132 D.P.R. 746 (1993).
Claro está, reconocer al acusado la oportunidad de refutar con prueba similar la prueba pericial en forma de una opinión diagnóstica según el síndrome del niño abusado sexualmente, no implica que la presunta víctima carezca de protección. Como hemos señalado, el testimonio pericial en esta zona está limitado a los aspectos relacionados con dicho síndrome, por lo que no procedería autorizar una evaluación psicológica para minar la credibilidad del menor o impugnar su capacidad testifical ante su “inestabilidad emocional”. Claramente, ello es así ya que el perito no puede opinar directamente sobre la veracidad o la confiabilidad de la versión de la presunta víctima. Por esa misma razón, entonces, tampoco tendría sentido autorizar *26 tal examen si el Ministerio Público no presenta inicialmente prueba pericial de esa índole. En ese caso, sin embargo, el acusado siempre podrá presentar prueba pericial sobre las características generales del referido síndrome aunque no obtenga la evaluación solicitada.
Nos encontramos en una zona muy delicada, que requiere determinaciones que se circunscriban a los hechos de cada caso en particular. Por lo tanto, los tribunales deben ser cautelosos al atender una solicitud de examen psicológico como ésta. De hecho, existen varias alternativas para atender este tipo de controversias. Una de ellas consiste en requerir a las partes que estipulen quién será el perito que realizará dicha evaluación o que ordene que los peritos de ambas partes estén presentes en ésta. El tribunal también debe emitir unas órdenes protectoras para mitigar cualquier perjuicio que la evaluación psicológica pudiera ocasionar al menor. Véase Crime Victims Research and Treatment Center, Child Witness Cases in Criminal Court: A Protocol for Action, Carolina del Sur, Medical University of South Carolina, diciembre de 1990, págs. 26—27.
Por otra parte, de no poderse implantar alguna de las alternativas antes reseñadas, el tribunal siempre puede ejercer su discreción para limitar el alcance del testimonio pericial a sus rasgos generales, de manera que se haga completamente innecesaria una segunda evaluación de la presunta víctima. De esta forma, el acusado no se vería perjudicado por una opinión diagnóstica de abuso sexual que no podría refutar con prueba similar, y el menor no tendría que someterse a otro examen mental.

No obstante, puede que existan circunstancias en las que un tribunal de instancia esté impedido de excluir del desfile de prueba una opinión diagnóstica de abuso sexual, porque ésta forma parte esencial del caso presentado por el Ministerio Público. Del mismo modo, y en muy raras ocasiones, puede que el tribunal tampoco esté en posición de tomar alguna de las medidas antes mencionadas para evitar, 
*27
tanto una segunda evaluación de la presunta víctima como la exposición del acusado a una posible situación de perjuicio. En ambos casos, los jueces de instancia deben evaluar con mucho detenimiento y reflexión si prohibir la evaluación solicitada por la defensa colocaría al acusado en un estado de indefensión. En otras palabras, deben determinar si en tales circunstancias la necesidad de autorizar el examen psicológico de la presunta víctima es mayor que el perjuicio que ello le podría causar.

En fin, como se puede apreciar, esta normativa no tiene la intención de eximir a una persona acusada de justificar su clara necesidad para procurar la evaluación psicológica de una presunta víctima de abuso sexual. Más bien, las guías antes reseñadas tienen el propósito de que los jueces de instancia atiendan las situaciones de este género de la manera más adecuada. La determinación final sobre la concesión de un examen psicológico para refutar una opinión diagnóstica de abuso sexual —es decir, el tercer tipo de testimonio sobre el síndrome del niño abusado sexualmente— continúa descansando en la discreción de los jueces de instancia, quienes deberán determinar, conforme a lo dispuesto en esta opinión, si a pesar de tomar las medidas aludidas la referida evaluación sigue siendo necesaria.
Aclarado lo anterior, procedamos a disponer concretamente del caso ante nuestra consideración.
H-1 I f—I
En el caso de autos, Olmeda Zayas ha solicitado un examen psicológico de la presunta víctima para determinar si presenta las características generales que exhibe una niña abusada sexualmente. Como fundamento para su solicitud, adujo que durante una vista de necesidad, al amparo de la Regla 131.1 de Procedimiento Criminal, supra, la perito del Estado aceptó que la menor era manipulable y dada a *28 contestar las preguntas de los adultos para complacerlos. Además, éste señaló que la menor dijo a los agentes investigadores que había sido abusada sexualmente en tres ocasiones, por tres personas distintas. Según Olmeda Zayas, esta información justifica la evaluación psicológica solicitada.
Por su parte, la Procuradora General señala en su alegato que Olmeda Zayas pretende obtener con su solicitud lo que a su entender sería prueba exculpatoria. En este sentido, argumenta que como el resultado de la evaluación pericial realizada por un perito del Ministerio Público no le favorece, éste “desea obtener igual oportunidad para producir un informe o evaluación pericial que sí le resulte conveniente”. Alegato de la parte recurrida, pág. 12. A su juicio, ello no constituye la clara necesidad que se requiere para sustentar una petición de esta naturaleza.
Tras analizar detenidamente los argumentos de ambas partes, así como la normativa reseñada anteriormente y el contenido del expediente ante nuestra consideración, concluimos que en este caso no están presentes las circunstancias que justificarían una evaluación psicológica de la presunta víctima a través de un perito de la defensa. En particular, del recurso presentado por Olmeda Zayas se deduce que su petición está dirigida a evaluar psicológicamente a la menor para impugnar la veracidad de su versión de los hechos. A tales efectos, Olmeda Zayas señala que el examen solicitado es necesario para descartar que ésta se haya inventado las alegaciones de abuso sexual o que se trate de una “falsa memoria” implantada por terceros; que le hayan dicho que con su declaración en este caso liberaría a su madre —también acusada— de toda culpa.
Por otra parte, Olmeda Zayas fundamenta su solicitud en ciertas declaraciones de la doctora Marchand, perito psicóloga contratada por el Ministerio Público. No obstante, tanto del informe pericial que obra en el expediente como de un resumen de su testimonio, surge claramente *29 que tales expresiones fueron ofrecidas en el contexto de dos vistas de necesidad dirigidas a justificar el uso del sistema televisivo de circuito cerrado. En otras palabras, no se trata de una opinión o de un informe pericial que tienda a “validar” o “corroborar” la versión de la menor. Aún así, Olmeda Zayas argumenta que como la doctora Marchand ha aceptado que la menor era manipulable y que no la había cuestionado sobre el abuso sexual al que supuestamente fue sometida en tres ocasiones anteriores, es necesario examinarla psicológicamente para que los miembros del Jurado estén en mejor posición de emitir un juicio sobre la culpabilidad de éste. No le asiste la razón.
Como señalamos anteriormente, para autorizar un examen psicológico de la presunta víctima en un caso como el presente, hay que demostrar la existencia de una base concreta que justifique tal evaluación. Aunque la Procuradora General señala en su alegato que el informe pericial de la doctora Marchand “avala” la versión de la menor sobre los hechos delictivos imputados a Olmeda Zayas, lo cierto es que de ese informe no puede derivarse tal conclusión. En rigor, el contenido del informe está enmarcado en el contexto de una vista de necesidad al amparo de la Regla 131.1 de Procedimiento Criminal, supra, y solamente hace referencia, a modo de ejemplo, a algunos rasgos que podrían asociarse al síndrome del niño abusado sexualmente. Sin embargo, esto no convierte al informe en un documento dirigido a probar que la menor en este caso fue víctima de abuso sexual, pues tales características sólo se identifican para demostrar que someter a la menor a un careo directo con el acusado le ocasionaría un trauma emocional severo.
Por todo lo anterior, resulta forzoso concluir que no pro-cede autorizar la solicitud de examen psicológico presentada por Olmeda Zayas. Por lo tanto, no se cometió el primer error señalado por el acusado en el presente recurso. Ahora bien, nada impide que éste renueve su petición si en el futuro el Ministerio Público anuncia que se propone offe *30 cer el testimonio pericial de la doctora Marchand para demostrar que la menor fue víctima de abuso sexual. En este sentido, de ello ocurrir, el Tribunal de Primera Instancia debe evaluar su solicitud según los criterios enunciados en la presente opinión. En particular, el foro de instancia debe determinar si dicha opinión es una parte esencial del caso presentado por el Estado. De no serlo, puede limitar el testimonio pericial a lo relacionado con las características generales del síndrome del niño abusado sexualmente y denegar el examen psicológico solicitado. Por el contrario, de constituir una parte esencial del caso, debe ordenar dicha evaluación tomando las medidas necesarias para mitigar cualquier perjuicio al bienestar de la menor, si es que prohibirla colocaría a Olmeda Zayas en un estado de indefensión y se trata de una situación de clara necesidad.
Por otro lado, Olmeda Zayas argumenta en su segundo señalamiento de error que el Ministerio Público aún no le ha dado los resultados de una prueba científica realizada al interior de su automóvil. Aunque la Procuradora General acepta que tal informe no se le ha entregado al acusado, aduce que ello responde a que el Instituto de Ciencias Forenses, entidad encargada de prepararlo, aún no lo ha completado. Sobre el particular, debemos reiterar que el hecho de que el Ministerio Público no tenga bajo su control determinada prueba no lo releva de su responsabilidad de proveerla si la ha generado una agencia gubernamental. Pueblo v. Rodríguez Sánchez, supra, págs. 247—248. Por consiguiente, y en atención a la obligación continua de informar que le impone al Estado la Regla 95B(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, ordenamos que se le provea a Olmeda Zayas una copia de dichos resultados tan pronto estén disponibles.
*31 IV
Por los fundamentos antes expuestos, confirmamos el dictamen recurrido y devolvemos el caso al Tribunal de Primera Instancia, Sala Superior de Arecibo, para la continuación de los procedimientos en conformidad con lo aquí resuelto. A su vez, ordenamos que el Ministerio Público entregue a Olmeda Zayas una copia de los resultados de la prueba científica realizada al interior de su automóvil tan pronto esté disponible.

Se dictará Sentencia de conformidad.

El Juez Asociado Señor Martínez Torres se inhibió.